BARBER ASPHALT PAVING CO. *v.* VILLAGE OF HIGH-
LAND PARK.

1. MUNICIPAL CORPORATIONS —BONDS —ACTIONS —DEFENSES —ES-
TOPPEL.

In mandamus proceedings by a contractor against a municipal corporation to compel the payment of a bond, respondent is not estopped to show that said bond was issued in reliance upon the promise of the contractor to thereafter complete the work in accordance with the contract, and that it had not done so.

2. MANDAMUS—PROPRIETY OF REMEDY.

Mandamus is not a proper remedy for the collection of the amount of a bond; there being an adequate remedy at law in which defendant can properly make its defense.

Certiorari to Wayne; Mandell, J. Submitted March 16, 1909. (Calendar No. 23,152.) Decided March 30, 1909.

Mandamus by the Barber Asphalt Paving Company to compel the village and common council of Highland Park to issue a warrant for the payment of a bond.

There was an order denying the writ, and relator brings certiorari. Affirmed.

*John J. Speed*, for relator.

*Robert E. Barber*, for respondents.

BLAIR, C. J. This matter comes before us upon certiorari to review the order of the circuit court denying appellant's petition for a writ of mandamus to compel payment of a paving bond issued by respondents. On August 1, 1899, a contract was entered into by the Barber Asphalt Paving Company, petitioner, and the village of Highland Park, respondent, for the grading and paving of a portion of Woodward avenue in the village of Highland Park, known as district No. 15. The contract provided that all of the work should "be done and performed to the satisfaction of the said village engineer," and, further, that the payment of the balance of the contract price should be made "when the said second party shall have completed all the said work to the satisfaction of the said village engineer, and when the said work shall have been accepted by the said first party, and when the said second party shall have performed all the covenants of this contract by it to be performed to the satisfaction of the said village engineer."

Mr. Ashwell, the village engineer, testified:

"In view of the fact that the Barber Asphalt Paving Company had been dilatory in getting its work started— for, although the contract was let on August 1, 1899, it was not until September 25th following that the first load of binder asphalt was delivered—it was considered about the middle of November that hard weather might set in at any time and would prevent the making of the roadway passable for some months, and that to take the men away from the roadmaking in order to remedy defects would jeopardize the completion of the roadway, and at an interview between Mr. Wright, representing the Barber Asphalt Paving Company, Dr. George R. Andrews and myself, as representing the trustees of the village of

Highland Park, held on the work about the middle of November, and at which interview Mr. Wright, representing the Barber Asphalt Paving Company, acknowledged that the work was not done in accordance with the contract, and that there were serious defects in the work already laid and put forward the statement as to what effect the delay in taking the men off the roadmaking proper might have, it was therefore agreed that, if the company would press forward this work so that the roadway should be completed (without any pretense that it was completed according to the contract and with a full knowledge and understanding that defects existed in the pavement and curb and gutter and that the work was not to be accepted until these defects were remedied the following spring), they, the Barber Asphalt Paving Company, should get their money without acceptance of the work."

In his report to the village trustees of November 20, 1899, the following appears:

"Several defects exist in the asphalt pavement already laid as well as in the curb and gutter. In the latter they are caused mostly by the roller when finishing the asphalt. In consequence of the lateness of the season, it has been agreed that the remedying of defects, except in case of danger, should be left till spring. The subsidence caused by the sewer connections will then have shown themselves."

On January 2, 1900, the engineer reported as follows:

"FINAL CERTIFICATE, SPECIAL ASSESSMENT DISTRICT No. 15.
"I have to certify that the Barber Asphalt Company, as contractors for grading and paving Woodward avenue, special assessment district No. 15, are entitled to a final certificate amounting to seventy-nine thousand three hundred and eighty-seven and 67/100 ($79,387.67) dollars. From this must be deducted amounts already paid."

February 26, 1900, a warrant for $1,286.79 was ordered in favor of petitioner and a time warrant for $5,000 due in four months at 6 per cent. interest. These warrants were for balance due on the contract. July 5, 1900, it

was ordered that time warrant for $5,000 be extended four months at 6 per cent. interest, and a warrant for $104.62 ordered for interest on warrant dated March 1st issued under order of February 26th.   October 30, 1900, warrant for $5,000 was ordered renewed for four months at 6 per cent. and a warrant for interest ordered.   February 26, 1901, warrant for $5,000 ordered renewed for four months and warrant for interest.   July 9, 1901, warrant for $300 to apply on warrant for $5,000, also warrant for interest and a new warrant for $4,700 to take up warrant for $5,000.   November 19, 1901, warrant for $200 to apply on warrant for $4,700 ordered, and warrant for $96.35 for interest, also that a bond be issued payable to the Barber Asphalt Paving Company for $4,500, with interest annually, payable at 5 per cent. from date of bond, this bond to be given in retirement of warrant No. 87, and clerk and president be ordered to execute said bond.   November 21, 1902, interest warrant for annual interest on bond.   November 16, 1903, warrant for interest on bond ordered.   Thereafter each six months interest was paid on the bond until petitioner's petition was filed. The bond recites that it is issued under a resolution adopted November 19, 1901, and acknowledges the indebtedness of the village to the holder in the sum of $4,500, and is made payable out of special assessment district No. 15 fund.   It states:

"The [this] bond is issued for the object of paying balance due the Barber Asphalt Paving Company for construction of pavement in special assessment district No. 15 and is payable out of special assessment district No. 15 fund."

After the adoption of the resolution ordering the bond, a controversy arose as to the form of the bond to be given, and petitioner filed a petition for mandamus against the president and clerk, who had been ordered to execute it. This petition set forth the contract of August 1, 1899, and that the work had been completed.   The defense of the petition was assumed by the village, and in the

answer the allegation of the petition as to the performance of the work was admitted to be true. The contract of August, 1899, provided that the contractor "shall keep and maintain the said pavement in good condition and repair for five years from the date of the acceptance of the said pavement by the village council, and that all repairs necessary shall be made within a reasonable time after notice being given to it by said council." The circuit judge found that the work was not performed in accordance with the contract; that it was not accepted by the village; that the warrants and bond were issued in reliance upon the agreement to put the pavement in the condition required by the contract, and were not conclusive proof of the acceptance of the work. He also held that the defendants were not estopped to question the plaintiff's right to recover on the bond, were entitled to a trial of the questions involved, and that mandamus was not the proper remedy.

We fully concur in the conclusions reached by the circuit judge. The preponderance of the evidence is strongly in favor of the defendants' position that the final warrant was given substantially as an advance payment in reliance upon plaintiff's promise to complete the pavement in the spring in compliance with the contract. The testimony of the then village engineer, supported by numerous reputable witnesses and the records of the common council, show this clearly, and also demonstrate that from the time of making the agreement till after the giving of the bond the village authorities were importuning the plaintiff to make good its agreement. In the light of such facts, it could not reasonably be held that defendants were estopped to present their defense or had waived any of their rights. The facts of this case do not bring it within the principle of *Schliess* v. *City of Grand Rapids*, 131 Mich. 52, but, so far as the doctrine of estoppel is concerned, it is ruled by *Field* v. *Village of Highland Park*, 141 Mich. 69. See, also, *Van Atkin* v. *Dunn*, 117 Mich. 421. We see no reason why, under the

circumstances of this case, the plaintiff may not bring its action upon the bond where defendants may properly make their defense. Even if mandamus were the plaintiff's only remedy, we agree with the circuit judge that it ought not to be issued in this case. *Van Atkin* v. *Dunn*, supra.

The order of the circuit court is affirmed, with costs.

GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.