### RYAN *v.* BAY CITY.

1. CONTRACTS — MUNICIPAL CORPORATIONS — BREACH — RECOUPMENT.

   A municipal corporation may recoup the cost of relaying unsuitable foundation for a pavement, in an action on a paving contract, which provided that on failure to execute the contract properly the board of public works might complete the work, where it appeared that the cement was laid in freezing weather, without directions of the municipality, after the date fixed in the contract for the completion of the work, although its inspectors were present and permitted the work to proceed.

2. SAME—CONSTRUCTION—IMPROVEMENTS—ESTOPPEL BY ACCEPTANCE.

   The inclusion of a portion of the imperfect work in estimates upon which payments were made by the municipality, does not constitute an estoppel to reject defective work afterwards discovered.

3. SAME—FRAUDULENT INSPECTION—PAVING.

   It was not erroneous to leave to the jury the questions of fraud of the plaintiff and fraudulent collusion of the inspector who claimed to have been present and watched the progress of the work continually and who permitted the use of faulty materials.

Error to Bay; Dodds, J., presiding. Submitted January 11, 1910. (Docket No. 28.) Decided March 22, 1910.

Assumpsit by Patrick Ryan against the city of Bay City for a balance due upon a paving contract. A judgment for defendant is reviewed by plaintiff on writ of error. Affirmed.

*L. P. Coumans* (*Lee E. Joslyn*, of counsel), for appellant.

*S. G. Houghton*, for appellee.

HOOKER, J. The plaintiff made a contract to do paving, according to specifications made a part of said contract, with Bay City. He was to furnish all material and labor and have the pavement completed on or before September 22d. In his contract it was provided that:

"The board of public works of said Bay City shall have the right and power to determine finally all questions as to the proper performance of the contract, and as to the completion of the work of this contract specified, and in case of dilatory, improper or imperfect performance thereof to suspend the work covered by this contract or any unfinished portion thereof, whether from unreasonable delay in performing the work, or other just cause, said board shall deem this contract forfeited.  *  *  *

"Failure or neglect on the part of the city engineer or his inspector to condemn inferior work or material at any time of its being supplied or done shall not be construed to imply an acceptance of any work. If it becomes evident to the engineer or board, at any time prior to the final acceptance of the work by the city, that improper material had been furnished, or inferior work done upon said improvements, he or the board shall have the right to order the removal of such material and work, and to require that suitable material be supplied and proper work done in lieu thereof by said contractor, without expense to the city.  *  *  *

"All material and workmanship shall be strictly first class, whether specially set forth herein or not, and shall

be subject to the inspection and rejection of the city engineer, and all materials condemned by him shall be removed from the work at once.    *    *    *

"If at any time it should appear to the board of public works that the pavement or any portion thereof is not being executed in a sound and workmanlike manner or with due diligence, or if the contractor shall from bankruptcy, insolvency, or any cause whatever be prevented or delayed in proceeding with the pavement in accordance with his contract and these specifications, it shall be lawful for the said board, after three (3) days' notice of their intention to do so, to employ any other contractor, workman or other person by contract, day work and otherwise, to proceed with such pavement and complete the same."

The pavement was not completed until the following spring, when on examination the board of public works claims to have found that the concrete laid the fall before as a foundation for a portion of the pavement was unsuitable to lay brick upon, and was not such a foundation as was contemplated and provided for in the contract, and plaintiff was required to remove it and complete the job according to the contract, and upon his refusal the work was done by another, and the city paid for it. This action was brought by Ryan to recover the balance unpaid him, and defendant made a counterclaim by way of recoupment. The trial resulted in a verdict for the defendant, and plaintiff has appealed.

The first contention is that it was error for the court to permit the defendant to show that the concrete became defective through freezing. This claim is based on the alleged facts:

(*a*) That the defendant's inspectors were present and permitted it to be laid.

(*b*) That it must be assumed that it was approved, because of payments upon estimates which must have included it.

In other words, the contention seems to be that the city took the chances of injury through freezing because it did not prevent the laying, and must be presumed to have

accepted poor work, or the consequences of unforeseen freezing because it did not withhold more of the plaintiff's pay. We are of the opinion that the plaintiff took the risk of freezing, unless he was ordered to lay the concrete at that time, of which we find no proof, although the court left the question to the jury. We are also of the opinion that including this concrete in estimates, if this was done, did not estop the city from denying its acceptance of the risk of freezing, or the consequences of concealed defects arising from the nonconformity to specifications. This is not like those cases in which the employer knew of violations of his contract, permitted them to go on without protest, and included them in estimates which were paid by him, as in the case of *Schliess* v. *City of Grand Rapids*, 131 Mich. 59 (90 N. W. 700), where it was said:

" The law would not permit defendant to see this work go on, to ratify it day after day and week after week, to see plaintiff putting in stone not in exact accord with the contract, and then say, when the work is done, ' You have not complied with the contract.' Its time to accept or reject was when the work was being done. It could not lull the plaintiff into the belief that this work was satisfactory, and, when completed, reject it."

The case is radically different from *Schliess* v. *City of Grand Rapids, supra,* where the contract contemplated construction in cold weather and where the work was done in wintry weather under directions of the proper authority.

In the case of *Lamson* v. *City of Marshall*, 133 Mich. 250 (95 N. W. 78), the majority opinion turned upon the fact that the plaintiffs acted under explicit orders made by the authorized representative of the city, which they were bound to obey. It was said:

" It is insisted, however, that the provision, 'Although the engineer may assent to special means of prosecuting work in difficult cases, this will not relieve the contractor of the responsibility of the result,' imposes upon the plaintiffs in this case the responsibility for the result of the im-

proper method of laying this sewer. In my judgment, this provision is not applicable to this case. If the plaintiffs are right in their claim (and whether they are right or not is a question for the jury), the engineer did more than assent to the means adopted in this case. He positively directed their adoption.  *   *   *

" The contractors are bound to obey the orders made in good faith by the engineer, whether those orders are advantageous or detrimental to their interests; nor are they exempt from obedience because they believe those orders to be unwise."

See, also, *Barber Asphalt Paving Co.* v. *Village of Highland Park*, 156 Mich. 178, 182 (120 N. W. 621). There is no testimony in the case that has been called to our attention that the representatives of the city knew of any violation of the contract, and stood by and permitted it. On the contrary, counsel are claiming that there was no noncompliance, and that there was no evidence from which it could be inferred.

The following excerpt from the charge is made the basis of alleged error:

"If you find from the testimony that the concrete was in such condition in the spring of 1904, that it could have been covered with brick, and that when so covered it would have made a good substantial pavement, such a pavement as is provided for in the contract and specifications, then the defendant was not justified in causing the concrete to be torn up and preventing the plaintiff from completing his contract, and the plaintiff ought to recover for whatever is due him by reason thereof. That is, he ought not to be charged up with the losses in that regard in case he did it—in case that in the spring after it was taken, as the plaintiff makes claim, that it was in a good condition then to lay the brick upon, and, if it was, the city ought to have allowed him to lay the brick upon it and complete his job.

"If you find that the city's engineer and inspectors charged with the duty of seeing that the pavement was properly built were present during the entire progress of the work and saw the manner in which the contractor was performing it, and knew the quality of the material, had personal knowledge of the quality of the material,

without objecting thereto, and if the board of public works acting weekly or at various times upon the reports made by such representatives of estimates reported by the city engineer, then the city is estopped to set up an improper performance of the contract so far as the contract was performed by the plaintiff in that way.

" Now, in explanation of that, gentlemen, you must remember that during all the time it implies that the inspectors were there and saw how it was being done themselves and knew the material. If they thought that the material was good, and the plaintiff knew it was not, then the plaintiff must suffer the loss, but if they knew about it as well as he did what the material was, and both of them thought that it was in accordance with the contract, then after it was completed the city cannot complain that this man did not do right if he did what he thought was right and what the inspectors thought was right at the time, but if 'he fraudulently concealed anything from the inspectors, or the inspectors themselves fraudulently allowed anything to pass, he also knowing of the defect, then the city can recover back at any time within the proper statute of limitations from them, and can make the defense in this case. I think you understand me, gentlemen.

" If both the inspectors and Mr. Ryan were wrong on anything that passed the city is not responsible for that, but the plaintiff is. If Mr. Ryan was wrong, and did not tell the inspector so that the inspector knew as much about it as he did, and the inspector acted ignorantly, and the plaintiff knew he was acting ignorantly, in allowing it to pass, then Mr. Ryan would be responsible, but if he acted in good faith, and told the inspector all that he knew about it, or did not try to conceal anything from the inspector, and supposed the inspector knew the whole thing, and it passed over and was received by the city and passed on as being completed, then Mr. Ryan would not be liable for the defects in it."

Counsel admit that the charge stated the law, but complain that there was no testimony tending to show that either the plaintiff or inspectors acted fraudulently, which the charge gives the jury the opportunity of finding. We are of the opinion that this is hypercritical. We have already said that there was evidence from which the jury might find that the material used was not according to

the specifications, and that the workmanship was faulty. It may be that the jury so found notwithstanding plaintiff's insistence that he conformed to the contract in every respect, and the attempt by Hess to carry the impression that he watched the work every minute. The jury may have thought that this condition of things implied concealment by the plaintiff or collusion between inspectors. At all events, we think that the court did not err in so limiting the right of plaintiff's assertion of estoppel.

There are some other questions raised to which we have endeavored to give critical attention and which we think it unnecessary to discuss further than to say that we find nothing erroneous in them. The case appears to have been fairly tried and presented to the jury, and the judgment is affirmed.

MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.