**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0311n.06

No. 19-1251

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MW CAPITAL FUNDING, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MAGNUM HEALTH AND REHAB OF | ) | **ON APPEAL** FROM THE |
| MONROE LLC, et al, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| **Defendants,** | ) | DISTRICT OF MICHIGAN |
| | ) | |
| MICHA US, LLC, | ) | |
| | ) | |
| **Intervenor - Appellant,** | ) | OPINION |
| | ) | |
| BENCHMARK HEALTHCARE | ) | |
| CONSULTANTS, LLC, | ) | |
| | ) | |
| **Interested Party - Appellee,** | ) | |
| | ) | |
| TRIGILD, INC., | ) | |
| | ) | |
| **Receiver - Appellee.** | ) | |
| | ) | |

**BEFORE: NORRIS, MOORE, and DONALD, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Appellant MICHA US, LLC purchased certain Michigan skilled nursing facilities out of receivership. MICHA objects to paying accrued management fees to Benchmark Healthcare Consultants, LLC, the management company hired by the receiver to run the nursing homes until they could be sold. The district court granted Benchmark's motion to compel payment by MICHA, holding that MICHA cannot challenge the fees because it was not a party to, or third-party beneficiary of, the management contracts. The fees

accrued under contracts between Benchmark and the receiver, Trigild, Inc., and MICHA agreed to pay those fees as a condition of buying the homes out of receivership. We affirm.

## I.

MW Capital Funding, Inc. ("MW") sued four skilled nursing facilities operating under the name Magnum Health and Rehab for defaulting under a loan agreement. The four facilities had a common owner and were located in the Michigan cities of Adrian, Hastings, Monroe, and Saginaw. In January 2017, the district court granted MW's motion for a consent order putting the nursing homes into receivership, and the court appointed Trigild, Inc. (the "Receiver") to take control of the nursing homes and negotiate a sale. The Receiver in turn hired Benchmark to manage the day-to-day operations of the facilities.

The management agreements between the Receiver and Benchmark (the "Contracts") provided that Benchmark would supervise and direct the operation and management of each facility until that facility could be sold as contemplated by the receivership. Both the Receiver and Benchmark had the right to terminate the Contracts at any time. Under the Contracts, the Receiver was obligated to pay Benchmark a fee of five percent of the total monthly gross revenue from each of the facilities, payable in arrears by the tenth of the following month. However, because the facilities were already experiencing financial difficulties, the Contracts allowed that if the cash flow from a facility could not support paying Benchmark's fees monthly, the amounts would accrue and then would be paid from the proceeds of the sale of the facility. In the event of a sale of a facility, that agreement would automatically terminate on closing, but the Receiver's obligation to pay Benchmark would survive termination.

The Contracts provided that Benchmark would be in default if it failed "to keep, observe or perform any material covenant, agreement, terrm [sic] or provision" of the Contracts, but only

if the default "continue[d] for a period of thirty (30) days after written notice thereof by Receiver to" Benchmark.

In May 2017, the Receiver determined that it was necessary to close the facility in Saginaw, Michigan. Around a year later, the Receiver and MICHA agreed that MICHA would buy the remaining three facilities. In June 2018, the district court issued a Necessary Sale Order (the "Sale Order") approving the transfer of MW's debt to MICHA and approving sale of the operating assets of the receivership to MICHA and its subsidiaries. The Sale Order provided that MICHA would take the assets "free and clear of all liens, claims[,] interests and encumbrances" that may have arisen *before* the Receiver was appointed. But the Sale Order required MICHA to pay all of the expenses that the Receiver incurred *during* the receivership, along with claims by various state and federal agencies. MICHA was also required to fund the Receiver until the date when the Receiver is released by the district court.[1] Specifically, relevant to this dispute, the Sale Order provided that all "valid accounts payable listed on the Receiver's most recent Statement of Account and Interim Report, including Benchmark, shall be paid in the ordinary course of business."

The month after the court issued the Sale Order approving the sale of the facilities to MICHA, Benchmark filed a motion asking the district court to compel MICHA to pay the accrued and unpaid management fees Benchmark had earned under the Contracts. MICHA objected because the trigger for payment, the *closing* of the sale (as opposed to the court's approval of the sale through its Sale Order), had not yet occurred and because in MICHA's view Benchmark "objectively failed to fulfill [its] obligations" under the Contracts.

---

[1] The district court approved the Receiver's final accounting and report, but because of the ongoing litigation the court has yet to discharge the Receiver.

The sale to MICHA closed on October 1, 2018. In January 2019, the district court held a hearing to consider Benchmark's motion to compel payment, and other issues not relevant to this appeal. The court agreed with MICHA that Benchmark's motion was premature when filed, but because closing had happened by the time of the hearing, Benchmark was entitled to payment. With respect to MICHA's assertion that it should not have to pay because Benchmark's services to the Receiver were deficient, the court held that MICHA had no basis to contest Benchmark's fees, which were incurred by the Receiver under the management agreements. MICHA filed a motion for reconsideration, which the district court denied. MICHA appealed.

## II.

"In a receivership proceeding, the district court has 'broad powers and wide discretion' in crafting relief." *Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 298 (6th Cir. 2009) (quoting *S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001)). We review the district court's interpretation of its Sale Order de novo, but "such review is undertaken with a good deal of deference to the district court's interpretation of its own orders." *Liberte Capital Grp., LLC v. Capwill*, 99 F. App'x 627, 633 (6th Cir. 2004). Whether MICHA may challenge Benchmark's fees under the management agreements generally is a question of law we review de novo. *See Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 443 (6th Cir. 2012).

The district court held that MICHA failed to "present[] a legal basis for it to contest Benchmark's fee under the management agreements, when it is not a party to those agreements and when the Receiver, the contracting party, has no objection to Benchmark's fee or its performance. The Sale Order does not provide a mechanism for MICHA to challenge the amount of Benchmark's fee . . . ." *MW Capital Funding, Inc. v. Magnum Health & Rehab of Monroe, LLC*,

No. 19-1251, *MICHA US, LLC v. Benchmark Healthcare Consultants, LLC, et al.*

No. 16-14459, 2019 WL 549173, at *2 (E.D. Mich. Feb. 12, 2019), *recons. denied*, No. 16-14459, 2019 WL 1077174 (E.D. Mich. Mar. 7, 2019).

It is uncontested that MICHA is not a party to the disputed contracts. Under Michigan law, a non-party can seek to enforce a contract only if that party is an intended and direct third-party beneficiary. *Shay v. Aldrich*, 790 N.W.2d 629, 639 (Mich. 2010); *see also* Mich. Comp. Laws Ann. § 600.1405 ("Any person for whose benefit a promise is made by way of contract . . . has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.").

MICHA contends that because the sale made MICHA subject to the *obligations* of the Contracts, it therefore must be afforded the *rights* of the Contracts. In support, MICHA cites a case in which a mortgage is explicitly assigned to a third party. *See Coventry Parkhomes Condo. Ass'n v. Fed. Nat. Mortg. Ass'n*, 827 N.W.2d 379, 382 (Mich. Ct. App. 2012) ("It is well established that an assignee stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses as the assignor."). MICHA also argues that the principles of surety law support its position, because MICHA agreed under the Sale Order to "answer for the debt" of the Receiver.

But MICHA clearly was not, nor even analogous to, an assignee or a surety. Under the Sale Order, MICHA accepted the obligation to pay the fees of Benchmark, accrued while the facilities were in receivership, in exchange for the right to purchase the facilities free and clear of all *other* facility obligations incurred *before* the Receiver was appointed. When the sale to MICHA closed, the Contracts automatically terminated under Section 20, subject to the Receiver's ongoing obligation to pay Benchmark. There is nothing in the Sale Order, or the Contracts, that plausibly could be read as an assignment of the Contracts from the Receiver to MICHA. It is not the case that MICHA was substituted for the Receiver under an ongoing contract. The Sale Order did not

require MICHA to assume any ongoing "obligations" under the Contracts other than to pay all expenses incurred by the Receiver while administering the receivership, including all of Benchmark's accrued fees.[2] Similarly, MICHA did not act as a "surety" by assuming some debt that the Receiver was unable to pay. MICHA purchased those facilities, subject to the Sale Order condition that MICHA pay all the expenses incurred by the Receiver during the period of receivership.

But even if, for the sake of argument, MICHA could step into the shoes of the Receiver, that still would not provide the relief MICHA seeks. In that hypothetical case, the terms of the Contracts would entitle MICHA only to terminate the agreement going forward under Section 2, or to give notice under Section 19(a) that Benchmark was in breach, triggering a thirty-day notice period during which Benchmark would be entitled to cure the breach. The work managing the facilities was performed by Benchmark over a period of approximately eighteen months. The Receiver never objected to Benchmark's performance, and so MICHA—hypothetically now in the shoes of the Receiver—could not now go back and object to the quality of services provided by Benchmark. It is long settled under Michigan law that when one party to a contract accepts performance by the other, the party is thereafter estopped from raising an objection to that performance. *See Ryan v. Bay City*, 125 N.W. 398, 399 (Mich. 1910) ("The law would not permit [a party] to see this work go on, to ratify it day after day and week after week . . . and then say, when the work is done, 'You have not complied with the contract.' Its time to accept or reject was when the work was being done."). Not only did the Receiver not object, but also the Receiver

---

[2] MICHA contends that it should not be responsible for the Benchmark fees that can be attributed to the Saginaw location, because that location was closed, and MICHA never acquired it. That argument is belied by the explicit provisions of the Sale Order, which require MICHA to pay *all* of the expenses incurred by the Receiver during the receivership.

reaffirmed at the motion hearing that the Receiver was "completely satisfied" with Benchmark's work in keeping the facilities open despite a severe shortage of funds, and that Benchmark should be paid.

Finally, MICHA represented in the Sale Order that it "had an opportunity to inspect and examine" the receivership assets, and "relied solely upon its own independent review, investigation and/or inspection of any documents and the premises" in reaching the purchase price. If, as MICHA alleges, Benchmark's substandard management during the receivership decreased the value of the facilities, that diminished value should have been reflected in the purchase price.

After a careful review of the record and the arguments of the parties, we are convinced that the district court was correct, and MICHA has not provided any legal theory under which it may challenge Benchmark's fees.

### III.

The judgment of the district court is **affirmed**.