In re Appeal of FRED APPLE from Special Assessment for street improvements, and eleven other cases consolidated therewith.

Municipal Corporations: STREET PAVEMENT: RESOLUTION AND NOTICE.
1 The resolution of necessity and notice of a street pavement, which advised the public of the general character of the improvement, and of the material to be used, implies that the same will be done in the usual and approved manner in the use of the designated material. Under this rule a resolution and notice stating that the pavement would be constructed of creosote wood blocks laid on a suitable sand cushion was sufficient, without specifying the particular kind of creosote wood blocks, or detailing the method of construction.

Same: LOCATION OF IMPROVEMENT: DESIGNATION. Where the resolution
2 of necessity and notice of a proposed street pavement designated the street to be improved and the terminals of the pavement they were in compliance with the statute; the width of the improvement need not be stated.

Same: CHANGE IN IMPROVEMENT: ASSESSMENT: VALIDITY. The stat-
3 ute does not require that the width of a street pavement be stated in the resolution of necessity and notice: So that in the final order for the improvement, which was made after the resolution was adopted and notice given, may be changed without invalidating an assessment; especially where the specifications were not adopted until after the change in the width.

Same: SPECIAL ASSESSMENT: COST OF STREET INTERSECTION. An as-
4 sessment of the full cost of paving street intersections against the property abutting upon the street being improved, wholly ignoring property abutting upon the cross streets, was not invalid; as the statute does not fix the limit of the intersection for which the property may be charged.

**Same:** SPECIAL ASSESSMENT:   VALIDITY:   VARIANCE FROM SPECIFICA-
TIONS.   The special assessment in this case was not rendered invalid
because of the use of unwashed gravel in constructing the foundation
for the pavement, which was approved by the city engineer, rather
than washed gravel as called for by the specifications, the specifi-
cations permitting the engineer to use a discretion in the matter.

**Same.**   A special assessment for a paving contract will not be held in-
valid because the thickness of the pavement may vary somewhat
from the specifications, where the work was accepted without fraud
or collusion, and the variations constituted no substantial injury to
the work as a whole.

*Appeal from Dallas District Court.*—HON. J. H. APPLEGATE,
Judge.

SATURDAY, SEPTEMBER 20, 1913.

APPEAL from decree confirming special assessment for
street paving.—*Affirmed.*

*H. G. Giddings,* for appellant.

*E. J. Kelly* and *H. S. Dugan,* City Solicitor, for appellee.

WITHROW, J.—I. The appellee has filed in this court a
motion to dismiss the appeal, based upon the fact that, since
the decree of the district court in these cases, the appellants
by permitting a sale of their properties for the special assess-
ments, or by payment to prevent such sales, have satisfied the
judgment and decree of the district court.   In view of our
finding as to the merits of the case on appeal, it is unneces-
sary to consider and decide this motion.

II. On January 21, 1910, the city council of the city of
Perry ordered the giving of notice of the time of hearing
objections to the passage of a proposed resolution of necessity
providing for the improvement of First avenue from the
North side of Willis avenue to the South side of Park street
by paving with creosoted wood blocks laid on a sand cushion

on a Portland cement concrete foundation, and by curbing to be constructed of Portland cement, sand, and gravel, all in accordance with specifications to be thereafter prepared by the city engineer and approved by the city council. The cost of construction, including street intersections, was to be paid by assessment against private property abutting the improvement.

The width of the paving nor the location of the curbing were not specified in the resolution of necessity. Prior to the commencement of these proceedings, the curb line or location for curbing on First avenue had been fixed by the city council, and permanent curbing had been constructed by property owners, leaving the traveled portion of the street at least sixty feet in width. Several weeks after the giving of notice had been ordered, and pending its completion by publication (i. e., March 8, 1910), the council adopted a separate resolution fixing the width of the paving on First avenue at thirty feet. Plans and specifications were prepared by the city engineer in accordance with the original resolution and its amendment and were approved by the city council March 17, 1910. The specifications provided for a foundation of Portland cement concrete of a uniform depth of four inches when properly compacted; the mixture to be of certain designated proportions. It was provided that "the sand used in the concrete shall be clean, sharp, free from loam and dirt," and that "the gravel used in the concrete foundation must be washed clean and free from sticks or other organic matters," etc. The specifications, which were evidently drawn by the city engineer, contained the following, designated as an "after word": "Since writing these specifications it has come to the writer's knowledge that there are several deposits of good bank gravel in this vicinity. If such is the case and clean bank gravel can be procured which will in all respects satisfy these specifications except in regard to being pumped or washed, the city engineer may at his discretion admit same for use in any of this work."

Following the adoption of the plans and specifications for the work, the contract was awarded to a construction firm, and upon the completion of the pavement the city council, after due notice to property owners, levied special assessments, from which in this proceeding appellants seek to have their several properties relieved. Appellants filed with the city clerk and presented to the city council objections to the assessment, which were overruled, and appeal was taken to the district court. Demurrer was filed to the petition and to Exhibit A, which stated the objections filed and presented to the city council. The trial court sustained the demurrer to objections numbered 1, 2, and 3, and error is now charged as to such ruling.

III. The first ground is based upon the claim that the preliminary notice did not state the kind of material to be used or the method of construction proposed to be adopted. The particular claim is that, while the pavement was proposed to be constructed of creosote wood blocks, "no one of the dozens of kinds of wood is specified, nor is there any specification as to quality, weight, size, or in any other respect are they described other than that they are to be creosoted wood to contain not less than sixteen pounds of oil to the cubic foot," and that they "are to be laid on a suitable sand cushion." It is not necessary that the resolution of necessity should present all the details of the proposed improvement. Its office is to apprise the public of the general character of the improvement and give opportunity for investigation and, if desired, for protest. A resolution and notice which advises the public of the general character of the improvement and of the material to be used implies a purpose to construct in the usual and approved manner in the use of the designated material. Following the rule announced in *Nixon v. Burlington*, 141 Iowa, 316, we hold that in the respect charged the resolution of necessity was sufficient.

1. MUNICIPAL CORPORATIONS: street pavement: resolution and notice.

IV. The second objection to which demurrer was sus-

tained was that the resolution and notice did not designate
the location or extent of the improvement. The actual location
and terminals of the proposed pavement were
named. The fault found by appellants is that
the width was not given. Code, section 810,
requires that the resolution designate the location and ter-
minal points. When the resolution designated the street to
be improved as ''First avenue from the North side of Willis
avenue to the South side of Park street,'' there was a literal
compliance with the statutory requirements. No more can be
required than the Legislature has fixed as necessary to be
stated in the notice; and it is not required that the width of
the improvement be then given.

2. SAME: loca-
tion of im-
provement:
designation.

V. The third objection to which demurrer was sustained
was that the width of the improvement was changed from the
fair intendment of the resolution; that is, from the width of
sixty feet between the old curbs to thirty feet.
This is necessarily covered by the ruling in
the preceding paragraph. If there was no
requirement that the width be given in the resolution of neces-
sity, it follows that such was to be determined by the city
council as it had the power to do if made a part of the specifi-
cations and if, as in this case, no additional burden was
created. This was done, and the specifications were not
adopted until after the width was definitely fixed.

3. SAME: change
in improve-
ment: assess-
ment: valid-
ity.

VI. The trial court found that the property was liable
to share in the cost of the paving of street intersections along
the line of the proposed improvement; the assessment thus
made being for the full amount of the inter-
sections extending into the traveled part of
the cross streets to a point in line with the
frontage of the lots abutting upon the improvement. Code,
section 817, gives to city councils the power in making street
improvements to include the cost of intersections in the gen-
eral account and distribute it over the abutting property in
connection with and as a part of the total cost, according to

4. SAME: special
assessment:
cost of street
intersection.

the benefits conferred.  No statutory rule is given as to the limit of the intersection for which charge may be thus made. It is the claim of appellant that it cannot exceed the width of the line of paving of which the intersections are a part, otherwise the property owners are compelled to pay for a part of the improvement on intersecting streets.  The plat prepared by the city engineer and filed with the specifications indicated that intersections were to be paved on cross streets to a point in line with the frontage of abutting lots, and the improvement made was in this respect in accordance with the plat. The Legislature has not in definite terms stated what is intended to be included as the area of street intersections, as applied to public improvements such as are here in controversy.  As bearing upon the liability of property owners for the construction of sidewalks, it has been held to be "the part of a street not directly in front of the lots but which fill out the spaces at the corners of blocks from the lot lines. . . . There is a space left at such place not directly opposite any lot, and known as an intersection."  *Gage v. Chicago*, 203 Ill. 26 (67 N. E. 477) ; Words and Phrases, vol. 4, section 3724.

In *Wolf v. City of Keokuk*, 48 Iowa, 129, this court held that an intersection at the crossing of streets includes the part of the street which the lot fronts and lies along, and includes the idea of breadth as well as length.  Neither of the cases above cited arose under conditions such as are presented here, but we are of opinion that, in the absence of a limitation by the Legislature, the rule above given should be accepted as a proper guide.  While it is true that there may, and no doubt often do, arise instances in which, by the application of this rule to original improvements, property owners on cross or intersecting streets which are later paved may not be assessed for a part of the intersection previously made at the cost of others, and thereby bear less than a just proportion of such burden, we regard this as a subject of legislative action rather than for the courts.  As the intersections extended to the line of the abutting lots, the city council acted within its powers

in including their cost as a part of the total amount to be distributed by assessment against abutting and benefited property.

VII. The remaining objections which are discussed on this appeal relate, first, to the charge that the foundation was materially less than four inches in thickness and was not of uniform thickness as required by the specifica-

5. SAME: special assessment: validity: variance from specifications.

tions, and, second, that the sand used in the foundation was not clean and sharp and free from loam, and the gravel used was not washed, and the sand and gravel were not properly proportioned as required by the specifications. These questions are of fact, upon which much testimony was introduced, all of which we have considered. As to the latter it will be noted that, as an *addendum* or "after word" to the specifications, it was stated that bank gravel in that vicinity, which would in all respects satisfy the specifications, could be used, reserving to the city engineer the discretion to admit or reject the same in the work. This gravel was, after having been thoroughly analyzed and tested, used with the approval of the city engineer; and a fair consideration of the evidence leaves in our minds no doubt that the concrete into which it entered was strong and enduring and substantially complied with all requirements, having, as shown in the record, the proportion of cement required to produce a result equal to that required by the original specifications. The evidence failed to satisfactorily show in the sand and gravel thus used the presence of the prohibited substances of sticks or other organic matter but on the contrary quite warranted the conclusion of the trial court, in which we concur, that in the respect charged there was a substantial compliance with the contract and specifications.

VIII. The other question is as to the thickness of the concrete base. Testimony was introduced tending to show

that, at different places along the line of the work, sections of
the base were removed and measured, and
6. SAME.
that they varied in thickness from two and
one-half inches to slightly in excess of four inches. The trial
court in an able opinion filed in the case, and which is before
us, in referring to the pieces of the foundation which had
been removed and measured, and which were introduced as
exhibits, but which have not been certified for our inspection,
stated as follows: ''Many samples of the concrete were intro-
duced in evidence and their thickness measured in many ways
in open court. Some of these exhibits, being small fragments
broken out of the foundation, measured less than three inches,
but they were not of uniform thickness; some of them bearing
evidence that some portions of the concrete had been broken
from the bottom of the block. Other samples measured over
four inches.'' It also appears from the record that witnesses
testifying on the part of the appellants did not agree as to the
results of what may be called test measurements, even when at
times referring to the same point. In the absence of the
exhibits, we must give due weight to that part of the finding of
the trial court based upon a personal inspection of them. It
is also shown that some of the exhibits were taken from places
near manholes, the cast iron covers for which were not ready
at the time. The city engineer testified that, knowing that
concrete too near the openings which were left would need to
be removed when the castings were put in place, but little care
was taken to get it of proper thickness close to the edges of
the manholes. The lower court found, and we agree with the
conclusion, that the foundation was not of a uniform depth of
four inches, but also that in the construction, as shown by
the proof, the quantity of materials used in the concrete foun-
dation was more than sufficient to have produced the required
uniform thickness. The evidence also shows that measure-
ments were frequently made from time to time as the founda-
tion was being spread, and that none showed less than a depth
of four inches. We are quite satisfied from a consideration of

the testimony on this point that there was no intentional departure from the terms of the specifications, and that the variations were but few and without substantial detriment, if any, to the entire work. The city engineer, as shown by the record, gave attention to the work during its progress, inspected and passed the same, and there is nothing from which we would have the right to infer fraud or collusion in procuring its acceptance.

This court has held in *McCain v. City of Des Moines*, 128 Iowa, 331, that where work has been accepted such act can only be interfered with on appeal by showing either actual or legal fraud. True, in that case it was found that there was such gross noncompliance with the specifications, materially resulting to the benefit of the contractor, that a finding of fraud was necessarily drawn from such conditions, but such conclusion cannot be reached from the record before us. As further bearing upon the rule as to the effect of substantial performance and acceptance, we refer to *Wingert v. Tipton*, 134 Iowa, 97, and *Ford v. Manchester*, 136 Iowa, 213. From the latter case we quote the following language which has pertinent application here: "In the performance of work of this character it is safe to say that compliance with every term and condition of the plans and specifications with complete and perfect mathematical exactness is never attained, and where the variation is of a trivial or negligible character, and especially where, as in this case, the engineer or overseer to whom both parties have committed the oversight of the work, acting in good faith without fraud or collusion, approves the work in all of its various stages of progress, no ground is afforded for denying a recovery upon the contract."

We do not find that there was a substantial variation made from the specification in spreading the foundation; and while the foundation did not with mathematical certainty meet all requirements as to its thickness, yet in the conditions shown, and in the light of the frequent measurements made

during the progress of the work, there was a substantial compliance with the terms of the contract.

There appearing no reasons which would justify us in holding the assessments invalid or erroneous, the decree of the lower court is *Affirmed*.

WEAVER, C. J., and LADD, DEEMER, GAYNOR, and PRESTON, JJ., concur. EVANS, J., took no part.