L. WIGODSKY, Appellant, v. TOWN OF HOLSTEIN, Appellee.

**MUNICIPAL CORPORATIONS:** Public Improvements—Resolution of
1  Necessity—Failure to Name Kind of Paving. The city council has jurisdiction to award a contract for a paving which was not specifically named in the resolution of necessity or in the published notice thereof, when said paving was proposed prior to bidding, was properly placed before the bidders, and was *identical* in materials with a paving which was specifically named in said resolution and notice, and differed from the paving so specifically named only in the *method of finishing the work.*

**MUNICIPAL CORPORATIONS:** Public Improvements—Specifications
2  —Failure to Have on File. The failure to have on file, prior to

publication of notice to bidders, full specifications for a named paving will not invalidate a contract for such paving, when the missing specifications were substantially embraced in specifications which *were* on file under the name of another paving, and when any shortcomings were properly placed before the bidders prior to the receiving of bids.

**MUNICIPAL CORPORATIONS:** Public Improvements—Contracts—
3 **Inadvertent Bid.** When the blank forms furnished by the city manifestly led the bidders into mistakenly bidding more for a 6-inch than for a 7-inch concrete paving, the council may (in the absence of all suggestion of fraud), in awarding the contract, treat the bids as the bidders really intended them.

*Appeal from Ida District Court.*—M. E. HUTCHISON, Judge.

APRIL 6, 1923.

ACTION in equity, in the name of a taxpayer and property owner, to enjoin the officers of defendant incorporated town from carrying out a paving contract and assessing the cost of paving against abutting property. The material facts are set out in the opinion. Judgment and decree dismissing plaintiff's petition. From this judgment he appeals.—*Affirmed.*

*Snell Brothers,* for appellant.

*Stipp, Perry, Bannister & Starzinger,* for appellee.

DE GRAFF, J.—On August 7, 1922, the town council of the incorporated town of Holstein adopted a proposed resolution of necessity for the paving of certain of its streets and alleys. Different types and methods of paving were proposed, as follows:
"First.  Concrete pavement 6 inches thick.
"Concrete pavement 7 inches thick.
"Second.  Asphaltic concrete pavement, 2-inch wearing surface upon a 5-inch concrete base.
"Third.  Warrenite bitulithic pavement, 2-inch wearing surface upon a 5-inch concrete base."
The notice to property owners of the proposed resolution of necessity described the types and method of paving proposed,

in substantially the language of the resolution of necessity.

**1. MUNICIPAL CORPORATIONS: public improvements: resolution of necessity: failure to name kind of paving.**

This was again followed in the notice to contractors. The town council, by resolution adopted October 2d, added to the kinds of paving previously proposed, vibrolithic granite concrete. The plans and specifications of the engineer were on file in the office of the town clerk, at the time the notice to bidders was published, for all of the several types of paving except the vibrolithic concrete. No specifications for this type of paving were filed until October 23d, the date fixed in the notice to contractors for receiving sealed bids. Notice, however, in the form of a letter signed by the engineer, of the addition of vibrolithic concrete to the other types of paving, was mailed to each of the persons and companies desiring to submit proposals for the contract, and those who later desired them obtained copies on the 23d, from the clerk or engineer, at Holstein. The bids for the various kinds of paving were on blanks prepared and furnished by appellee's engineer, and were divided into classes, designated as A, B, C, D, E, F, G, H, K, L, and M. A, C, E, G, K, and L designated a 6-inch paving, and all other classes a 7-inch paving.

A large number of sealed proposals were submitted to the town council, among which was that of the Western Asphalt Paving Corporation, for vibrolithic concrete paving, which was accepted by the council.

The propositions relied upon by appellant for reversal may be briefly summarized as follows: (a) That, as neither the proposed resolution of necessity nor the notice of the time fixed for hearing objections thereto referred to vibrolithic concrete paving, the town council was without jurisdiction or authority to award the contract therefor; (b) that the specifications on file in the office of the town clerk at the time the notice to bidders was published did not cover vibrolithic concrete, and did not, therefore, comply with the statute; and (c) that the bid of the Western Asphalt Paving Corporation was not the lowest bid proposed, and that the council proceeded illegally in accepting the same and awarding the contract to this bidder.

I. The law is well settled that the published notice of the proposed resolution of necessity need not state all the de-

tails of the contemplated improvement.   It is sufficient if it apprises the public of the general character of the improvement and the material to be used, so as to permit investigation and objection to be intelligently made and filed by those affected by the proposal.  *Miller v. City of Oelwein,* 155 Iowa 706; *Benshoof v. City of Iowa Falls,* 175 Iowa 30; *City of Bloomfield v. Standley,* 174 Iowa 114; *In re Appeal of Apple,* 161 Iowa 314.

The sufficiency of the proposed resolution of necessity and the notice of the time fixed for final hearing by the council are challenged only upon the ground that neither referred to vibrolithic concrete paving.   The theory of appellant's argument is that this type of paving, which is patented, and could be used only with the consent of the patentee, should have been specifically designated in both the proposed resolution of necessity and the published notice, and that the failure to do this is fatal.

Vibrolithic concrete paving is distinguished from other types of concrete paving only by the method of finishing it.   The patent covers the equipment and method of finishing the surface and tamping the mixture after it is laid.   The engineer testified upon this point as follows:

"There is no difference between vibrated granite concrete pavement and Portland cement concrete pavement, except in the manner of finishing.   There is no difference in the materials used.   Vibrated granite concrete pavement is concrete pavement that has been tamped, pounded, and solidified, and the concrete is thus made more dense than the ordinary concrete."

The owner of the patent, on the day fixed by the council for receiving sealed proposals, consented, in a written instrument filed with the clerk, to the use of his patent, for a consideration of 65 cents per square yard of the paving laid.   Said written instrument contained the following:

"1.   The necessary vibratory machinery and equipment, and transmission units with required vanes for the installation of mastic joints, including joint material placed transversely in the slab.

"The necessary abrasion-resisting stone for the wearing surface, together with the necessary small tools for the spreading thereof and the finishing of the paving slab.

"2.   The necessary operators, stone spreaders, finishers,

and other labor to properly spread the surface stone on the surface of the green concrete base and to properly vibrate same into such base and then to finish the pavement to the point of curage (but not including curing thereof), all in accordance with the plans and specifications.

"3. A supervisor, who shall supervise such operations, and who shall also have the right to inspect equipment and material furnished by the contractor for his part of the work, and the power to condemn either improper equipment, material, or workmanship; the contractor by his acceptance of this agreement hereby consenting that the supervisor shall have such authority. The decision of such supervisors shall be final, provided such decisions have the approval of the engineer in charge."

The material and kind of mixture were the same for vibrolithic concrete as for the concrete paving mentioned in the proposed resolution of necessity and the published notice. It is laid in exactly the same manner, and is in all respects identical with other concrete paving. The method of finishing is indicated in the quotation from the writing filed by the owner of the patent in the clerk's office, and in the testimony of the engineer. As stated, this type of paving was proposed by the resolution of the council adopted October 2d, and was described in the letter written by the engineer to all prospective bidders.

The question for decision is: Did the council acquire jurisdiction to award a contract for this type of paving? It seems to us that the question can be answered in only one way. The substance and body of the proposed vibrolithic concrete are, as stated, identical with other forms of concrete paving. It is finished in a different manner, and by the use of a patented process; but it is, when completed, a concrete paving. It was not necessary for the proposed resolution of necessity or the published notice to describe in detail the method of constructing the paving. A general description thereof and of the kind of material to be used is sufficient. Several witnesses testified that even an experienced contractor could not distinguish between concrete paving laid in the ordinary manner and that laid and finished by the patented process. Greater density is obtained by the use of the vibrated method of finishing.

It is true that we have sometimes, in passing upon the sufficiency of a proposed resolution of necessity and notice, said that the designation of the type of paving implies the purpose on the part of the council to construct it upon a sound foundation and in the usual and ordinary method. *Nixon v. City of Burlington,* 141 Iowa 316, 322; *In re Appeal of Apple,* supra. The court did not, however, in the use of this language intend to hold that the failure to incorporate full details in the notice should operate to limit the method or manner of construction to any particular mode, but only to indicate that the quality of the material and work should be equal to that usually and ordinarily used in paving of the designated type. We are not inclined to hold the notice insufficient.

II. What is said above answers, to some extent, perhaps, the contention of appellant that the action of the city council is void because of the failure of the engineer to have the speci-

2. MUNICIPAL CORPORATIONS: public improvements: specifications: failure to have on file.

fications for the vibrolithic concrete paving on file before or at the time the notice to bidders was published. The resolution of the council adding this type of paving to the other classes designated in the original proposed resolution of necessity was adopted October 2d, which was prior to the time fixed for the filing of objections to the improvement. This resolution did not, of course, take the place of the specifications of the engineer, but, coupled with those already on file, it could not have been overlooked by anyone investigating the full record of the proceedings of the town council. The specifications covered the materials and the mixtures of concrete for each of the various types of paving proposed. This, without specific designation, included the type in controversy. The requirements that the specifications be on file at the time notice is given to contractors were intended largely to provide for uniformity and accuracy in bidding, and to give definiteness and certainty to the contract. It is of little use to those objecting to the adoption of a proposed resolution of necessity. Each bidder was furnished with specifications of the vibrolithic concrete, and one or more witnesses testified that they were sufficient for intelligent bidding. The failure of appellee to have on file in the office of its clerk full specifications of the type of paving in con-

troversy, prior to the publication of notice to bidders, cannot, under the admitted facts in this case, be made a ground for holding the contract in question invalid.

III. The resolution of the council adopted October 2d added to the other types of paving the proposed vibrolithic concrete, designated therein as "Classes M and L," said classes to be 6 inches and 7 inches thick, respectively.

3. MUNICIPAL CORPORATIONS: public improvements: contracts: inadvertent bid.

The classes, which, as stated, were designated by letters, were written or printed upon the blank forms furnished to bidders, in their proper alphabetic order. This transposed the order adopted in the resolution of October 2d, and of the other classes mentioned: that is, 6-inch paving was first mentioned in all of the designated classes except vibrolithic. As the letters were transposed in the resolution of the council, the 7-inch paving of this type was mentioned first. This, it is claimed, caused the bidders to make a higher bid for the 6-inch than for the 7-inch paving, although they were in every other particular alike. But one of the five bidders upon this type bid less for the 6-inch than for the 7-inch paving.

After all of the sealed proposals were delivered to the council, they retired with the engineer, and opened the bids in secret. While they were in the act of tabulating the bids, for the purpose of ascertaining which was the lowest, it was discovered by those present that the price per square yard bid for the 6-inch paving by four of the builders was higher than that bid for the 7-inch vibrolithic concrete. The council concluded that this was a clear mistake, due to the alphabetic order of the other classes and the transposed order of Classes L and M, and treated the bid of the Western Asphalt Paving Corporation, of $2.25 per square yard for the 7-inch paving, as its bid for the 6-inch paving. This method of tabulating the bids, if legal, entitled this corporation, as the lowest bidder, to the contract. After the result was ascertained in this manner, the council returned to its chamber, and announced the result of the bidding. Before this announcement was made, the engineer informed the president of the Western Asphalt Paving Corporation, who was present, of the apparent mistake. He admitted the error. Later,

the successful bidder filed a written declaration to that effect in the office of the town clerk.

It is vigorously argued by counsel for appellant that this method of awarding the contract was in violation of Section 813 of the Supplemental Supplement to the Code, 1915, requiring that contracts for paving be let upon competitive bids.

This section of the Code is mandatory, and must be followed. *Atkinson v. City of Webster City,* 177 Iowa 659. This statute was enacted for the protection of the public, and it should not be impaired in any way by construction. If the action of the city council violated this statute, it should not be upheld. Fraud is not claimed. There is no evidence whatever of collusion. In fact, the testimony of the various members of the city council tends strongly to negative any possible claim of that character. It seems to us that the mistake of the bidder in setting the higher price opposite Class L, the 6-inch paving, and the lower price opposite Class M, the 7-inch paving, is so patent that the council could not well have construed the bid otherwise than it did. The fact that the bid of the Moore Young Company for the 6-inch paving was much lower than that of the other bidders, and within 4 cents of the bid of the Western Asphalt Paving Corporation for the 7-inch paving, is a circumstance of some significance. Except the bid of the Moore Young Company, all of the bids submitted for the 6-inch paving were higher than those submitted by the same bidders for the thicker paving. The transposition of the order of Classes L and M on the bidding blanks was undoubtedly the cause of the error. There was no negotiation or conference between the council and the Western Paving Corporation after the sealed bids were opened, and before the result was announced. The town council and the engineer recognized the error, and proceeded as stated. The difference in the bids can be explained and reconciled upon no other possible hypothesis than mistake. No one submitting a proposal for a contract to construct paving would bid a higher price for a type 6 inches in thickness than for an identical paving 1 inch thicker. The bid was, in legal effect, a bid of $2.25 per square yard for the 6-inch vibrolithic paving. It is, therefore, our conclusion that the contract, performance of which appellant seeks to enjoin, is not invalidated by any of the ir-

regularities · complained of. The question as to whether the plaintiff should have appealed, instead of proceeding in equity for an injunction, is not raised, and we therefore make no holding on this point. The judgment and· decree of the court below is, accordingly,—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.