W. W. CARDELL et al., Appellants, v. CITY OF PERRY, Appellee.

**MUNICIPAL CORPORATIONS:** Public Improvements—Resolution of
1    Necessity—Details in re Materials. A statement of the kinds of
materials to be used in a paving project is sufficient if the public
is so apprised of the general character of the materials that it may
intelligently investigate and intelligently object if found necessary.
(See Book of Anno., Vol. 1, Sec. 5991, Anno. 8 *et seq.*)

**MUNICIPAL CORPORATIONS:** Public Improvements—Assessments—
2    Failure to Substantially Perform Contract—Effect. The appellate
court will not invalidate an entire assessment for paving because
of the nonfraudulent failure of the contractor to substantially
comply with the construction of some minor part of the work, i. e.,
a 6- or 8-inch longitudinal expansion joint along the curb; nor will
the court attempt to readjust the assessment because of such de-
fault when the record contains no data from which such readjust-
ment can be intelligently arrived at. (See Book of Anno., Vol. 1,
Sec. 6018.)

**MUNICIPAL CORPORATIONS:** Public Improvements—Assessments
3    Exceeding Benefits—Inadequate Record. The court cannot pass
upon the issue whether assessments are in excess of benefits when
the record is practically silent as to property values, relative bene-
fits, and the general situation of the property.

**Headnote 1:** 28 Cyc. p. 978. **Headnote 2:** 28 Cyc. p. 1183 (Anno.)
**Headnote 3:** 28 Cyc. p. 1183 (Anno.)

*Appeal from Dallas District Court.*—W. S. COOPER, Judge.

### MARCH 16, 1926.

APPEAL from the action of the district court in confirming
special assessments for paving levied against property by the
city council of Perry, Iowa.—*Affirmed.*

*Harry Wifvat* and *George J. Dugan,* for appellants.

*Geo. H. Sackett,* City Solicitor, *W. H. Winegar,* and *Miller, Kelly, Shuttleworth & McManus,* for appellee.

DE GRAFF, C. J.—This appeal brings before us a consolidation of 101 other cases with the one named in the caption. The questions raised involved the validity of special assessments against the property of appellants for the repair and reconstruction of curb, gutter, pavement, expansion, and base on First Avenue, Warford Street, Willis Avenue, and Second Street in the city of Perry. Appellants filed written objections with the city council, which objections were overruled. An appeal was taken to the district court. Following a hearing on the merits, judgment was entered confirming the assessments, and from such decree appeal is taken to this court.

I. The basis of complaint of which we will first take notice is to the effect that the resolution of necessity did not name the kind of material to be used in the improvement.

The resolution of necessity in question contemplates a rather ambitious program of public improvement. The territory embraced covers three special divisions or methods of treatment,—bitulithic paving, wood-block paving, and new work. Each division is subdivided into numbered paragraphic specifications, as follows:

### "Bitulithic Paving.

"No. 1. By resurfacing with sheet asphalt, Willite process, from one to one and one-half inches in thickness after the old top has been properly repaired.

No. 2. Sheet asphalt from one to one and one-half inches in thickness after the old top has been properly repaired.

No. 3. By resurfacing with asbestophalt from one to one and one-half inches in thickness after the old top has been properly repaired.

No. 4. Cutting out old top where needed and patching with binder and applying double flush coat.

### "Wood-block Paving.

"No. 1. With concrete four to six inches in thickness plain or reinforced.

No. 2. Vibrolithic concrete four to six inches in thickness plain or reinforced.

No. 3. Vitrified paving brick three inches thick on a one and one-quarter inch cement sand cushion with asphaltic filler.

No. 4. Asphaltic concrete two and one-half inches thick after bringing old base up to the required grade with binder course.

No. 5. Bitulithic two and one-half inches thick after bringing old base up to required grade with binder course.

No. 6. Sheet asphalt Willite process one-inch binder and one and one-half inch wearing surface after bringing old base up to required grade by binder.

No. 7. Asphaltic concrete, Willite process two and one-half inches thick after bringing old base up to required grade with binder course.

No. 8. Any of the preceding types, fourth, fifth, sixth, or seventh, laid two inches thick on a four-inch vibrated concrete base or on a four-inch reinforced concrete base or on a two-inch binder course.

No. 9. By taking up relaying wood blocks on a bituminous cushion using a bituminous filler.

No. 10. By repairing base where needed providing for expansion oiling and flush coating surface of blocks.

"New Work.

"No. 1. Concrete paving six to eight inches thick plain or reinforced.

No. 2. Vibrolithic concrete six to eight inches in thickness plain or reinforced.

No. 3. Vitrified brick three inches thick and one and one-quarter inches sand cement cushion on a four to six-inch concrete base and with asphaltic filler.

No. 4. Asphaltic concrete two or two and one-half inches in thickness on a four to six-inch plain or vibrated base.

No. 5. Bitulithic paving two or two and one-half inches thick on a four to six-inch plain or vibrated concrete base.

No. 6. Sheet asphalt, Willite process one-inch binder and one or one and one-half inch top on a four to six-inch plain vibrated concrete base.

No. 7.  Asphaltic concrete, Willite process two or two and one-half inches thick on a four to six-inch plain or vibrated concrete base.

"All said pavement and gutter and repair of same to be constructed in strict accordance with plans and specifications therefor prepared by R. C. Lutze, city engineer, and approved by this council, and to be filed in the office of the city clerk."

We have set out the foregoing *in extenso,* in order to make clear the principles of law applicable thereto.

What is the statutory requirement in the preparation of a resolution of necessity?  Section 5991 of the Code of 1924 provides:

"When the council shall deem it necessary to construct, reconstruct, or resurface any street improvement or to construct or reconstruct any sewer, it shall, in a proposed resolution, declare such necessity, stating the kinds of material proposed to be used and method of construction, whether private property will be assessed, and, in case of sewers, the kinds and size, and what adjacent property is proposed to be assessed therefor, and in both cases designate the location and terminal points thereof. That the plat and schedule are on file in the office of the clerk shall be stated in the resolution."

The purpose of a resolution of necessity is to give public notice, especially to those whose property interests will be affected thereby, that, under proper statutory authority, certain streets are to be improved by the laying of new pavement.  In the instant resolution of necessity the citizens of Perry with property abutting on the streets named, were apprised that the city council had, on its own motion, launched a paving project, and that there would be resurfacing on certain streets, wood-block paving on others, and entirely new work on still others.  This was, in our opinion, quite sufficient to place the people interested upon inquiry.  It is unnecessary that resolutions to cause certain paving to be done or estimates in detail of the work and its cost should be very technical in their wording.  If, from the resolution, estimate, contract, and other documents or proceedings, the intent of the

1. MUNICIPAL CORPORATIONS: public improvements: resolution of necessity: details *in re* materials.

council is made apparent, the intent will prevail; and even when there are variances between some of the papers, assessments made pursuant to such plain intent will be sustained. Hamilton on the Law of Special Assessments, Section 593.

We held, in *Wigodsky v. Town of Holstein,* 195 Iowa 910, that the law is well settled that the published notice of the proposed resolution of necessity need not state all the details of the contemplated improvement. It is sufficient if it apprises the public of the general character of the material to be used, so as to permit investigation and objection to be intelligently made and filed by those affected by the proposal.

Even if a proposed resolution was not sufficiently specific, it could be amended at the time fixed for its consideration and passage. See Section 5996, Code of 1924. And it should not be forgotten that Code Section 5991, heretofore cited, contains the phrase, "the kinds of material *proposed* to be used," showing the tentative character of the resolution.

That the resolution was quite effective for its primal purpose is evidenced by the fact that it brought the property owners interested before the city council with their objections. But for such appearance and objections, they would have had no standing in any court. *Miller v. City of Oelwein,* 155 Iowa 706. See, also, *City of Bloomfield v. Standley,* 174 Iowa 114.

After a careful examination of the record, we are convinced that the resolution of necessity, which was quite elaborate in outline and specific in subject-matter, fully met the statutory requirements, and gave the property owners interested a very clear understanding of the nature of the project contemplated.

II. It is seriously urged by appellants that, in the matter of the longitudinal expansion joints, the contractor failed to comply with the plans and specifications. The contract provision under consideration reads:

"A longitudinal expansion joint shall be left not less than six (6) or more than eight (8) inches in width along the curb and shall be filled with a bituminous mastic composed of 75 per

cent sand and 25 per cent bitumin as hereinafter specified for carpet coat. The sand shall be clean and fine ranging from 200 mesh material to ⅛″ containing about 20 per cent 200 mesh material, and the sand and bitumin shall be heated and mixed at a temperature of approximately 225 degrees F. The surface shall be entirely filled with this mastic, and leveled and smoothed to the surface of the blocks, and graded so as to not obstruct the flow of surface water.''

2. MUNICIPAL CORPORATIONS: public improvements: assessments: failure to substantially perform contract: effect.

Does the record show such ''substantial compliance'' with contract requirements as to justify permitting the assessment to stand? The question of substantial performance or compliance in the matter of contract interpretation has been frequently answered, and the limitations defined, in text and decision. See 8 McQuillin on Municipal Corporations, Section 1925; *Dickinson v. Sheldon,* 146 App. Div. 144 (130 N. Y. Supp. 889); *Leary v. City of Watervliet,* 97 Misc. Rep. 127 (160 N. Y. Supp. 1042); *Foeller v. Heintz,* 137 Wis. 169; *Pippy v. Winslow,* 62 Ore. 219; *Littell v. Webster County,* 152 Iowa 206; *In re Appeal of Apple,* 161 Iowa 314; *Wingert v. City of Tipton,* 134 Iowa 97; *Atkinson v. City of Webster City,* 177 Iowa 659.

In the *Atkinson* case we emphasized the importance of fidelity to the specifications of a paving contract, but there were many features in that case which are absent from the case at bar. The viewpoint therein expressed, however, might with propriety be reiterated in the instant case.

Analyses and tests were made of the materials used in the case before us, and the results are disclosed in the record. We deem it unnecessary to set out the evidence in detail. This expansion joint was along the wood-block pavement, between the pavement and the curb. The object of this expansion joint was to give a soft cushion, permitting the expansion of the wood blocks under the influence of weather conditions.

The experts for the plaintiff were in accord that the samples tested did not constitute a substantial compliance with the plans and specifications. Witness Agg, of the engineering faculty of the Iowa State Agricultural College at Ames, testified:

"It is expected that substantial compliance will mean within two or three per cent of the specified amount, in engineering practice."

There is some testimony offered on the part of the defendant-city to break the force of the evidence offered on behalf of the plaintiffs. Witness Barnes, who worked under the contractor, testified that they counted the number of shovels in a bucket, and that they put in one fourth asphalt and three fourths sand and gravel, "as near as we could. I did not keep any record of the asphalt put in."

City Engineer Lutze, who had charge of the inspectors, in answer to the question whether the bitumen and sand were put in the pavement in contract proportions, answered, "It was, as far as I know."

It is shown that five or six samples of the expansion joint were taken up and analyzed by plaintiffs' experts. The trial court found that an analysis of these samples showed not only that the proportion of sand was larger than that provided for, but also that a much lower proportion of asphalt was used than specified.

The city engineer, with all the work he had to do, did not make as many tests as he should have made; and it is probably true that the inspectors did not have as much knowledge of the matters as should have been brought into play, under the circumstances. Undoubtedly, the expansion joint did not cost as much as it would have cost had the materials been used as required by the specifications.

The city is but the agent for the property owners, and it is true that the property owners have but little, if anything, to say during the progress of the work. Usually they have neither time nor inclination to examine into conditions as the work progresses. As said in *Atkinson v. City of Webster City,* supra:

"As a matter of common honesty, such contracts ought to be strictly complied with and performed, and the city authorities should see to it that it is so."

There is no evidence of actual fraud in the instant matter, nor is there any indication of fraudulent purpose. Nevertheless,

property owners are entitled to that for which they are called. upon to pay. Public improvement contracts and the manner of their fulfillment demand the closest scrutiny. The substitution of materials, slipshod inspection methods, and the numerous other deviations from standard which so frequently occur, call for constant vigilance.

The question remains, How can the conclusion indicated herein be made effectual for relief to the 102 property owners who are prosecuting this appeal? Our statute gives the court, on appeal from an assessment, a broad and comprehensive power of review. Sections 6063 to 6065, inclusive, Code of 1924. See, also, *Early v. City of Fort Dodge,* 136 Iowa 187.

To accede, however, to the sweeping demand for the setting aside of the entire assessment is something not warranted by the instant record, since we are persuaded that the wrong done represents a very minor, rather than a major, proportion of the whole. To decree a 25 per cent reduction or any other percentage of reduction of the whole assessment would involve an arbitrary mathematical adjustment for which there are no figures in the record available as a basis. There is no evidence as to the costs of this portion of the pavement, and the court, therefore, has no data upon which to determine the amount to be deducted from the total assessment. No question of equitable assessment or adjustment is involved. In view of this state of the record, there is but one thing that the court can do in this particular, and that is to affirm the judgment below.

Lastly, it is contended that the court erred in holding that the assessments were not in excess of the benefits. With so little light obtainable concerning property values, with so meager a showing as to the benefits or the lack of benefits to the many lots or tracts of ground involved, with so inadequate an outline of the territory adversely affected, and of its ratio to the unharmed, we are confronted with no alternative except that of affirming the action of the district court.

3. MUNICIPAL COR- PORATIONS: public improvements: assessments exceeding benefits: inadequate record.

Wherefore, the decree entered is—*Affirmed.*

STEVENS, FAVILLE, and VERMILION, JJ., concur.