SIOUX CITY, Appellee, v. WESTERN ASPHALT PAVING CORPORATION et al., Appellants.

No. 43180.

JULY 31, 1936.

OPINION ON REHEARING, FEBRUARY 16, 1937.

REHEARING DENIED MAY 17, 1937.

Fred H. Free and Robert P. Munger, for appellee.

Helsell, Burnquist, Bradshaw & Dolliver, for appellants.

HAMILTON, J.—This case was argued and submitted at the January, 1936, term of this court, and the opinion by Justice Parsons is reported in 268 N. W. 595. Appellants petitioned for rehearing, alleging that the opinion failed to determine or pass upon essential matters properly presented by the brief and argument, the determination of which, the appellants contend, will dispose of the case. A rehearing was granted and the matter was re-argued and again submitted to the court. Accordingly, the former opinion is withdrawn and this opinion substituted therefor.

The record is quite voluminous; the pleadings alone comprise more than 150 pages of the printed abstract, including petition and amendments thereto, to which are attached the contract and specifications. This was attacked by motions and demurrer, followed by an additional amendment to the petition to comply with the court's ruling to make the petition more specific. Following this are separate answers by the defendants, followed by a reply, amended and substituted reply, and motion

for change of venue, with a long list of exhibits and affidavits in support of the said motion and resistance thereto. There seems to have been considerable confusion in the court below and among the parties, as to just what the suit was about. As we view the record, the suit is one for damages based upon breach of contract in the failure of the contractor to substantially comply with the contract and specifications, the failure in compliance consisting .in the pavement when constructed being of an average thickness of between four and five inches, instead of six inches, as provided by the contract. The plaintiff itself defines its cause of action when it states in an amendment to its petition "that this action is brought for damages resulting from the breach of the written contracts and the various bonds given with respect thereto, * * * by the city of Sioux City in its corporate capacity as one of the parties to the contract upon the breach of which this action is brought." And in another paragraph it states: "As a further requirement of the ruling of the court herein the plaintiff respectfully states that this is an action brought for the breach of a written contract, and on the bond given for the faithful performance thereof," and in the prayer of the petition as finally amended plaintiff "asks that it may have judgment upon this its first count in the sum of $1,776 as damages for breach of contract, $95.54 for costs of coring, or a total judgment of $1,871.54, with interest, costs and attorney fees from the date set forth in Count 1 of plaintiff's petition."

This same form of expression is contained in the prayer of all five counts of plaintiff's petition.

It might as well be stated at this point that the measure of damages by which the plaintiff arrives at the amount prayed for is based upon the following provision of the specifications:

"Before the pavement is accepted the thickness may be tested by removing as many cores as the city engineer and the commissioner of streets and public improvements may determine. If the average thickness is more than one-quarter inch and less than one inch below that specified, the price will be reduced by an amount double the actual deficiency. If the average thickness is one inch or more below that specified, the pavement will be rejected. The reduction will be as thickness is to price per square yard." ⁻

The basis for recovery of the costs of the coring is the fol-

lowing provision of the specifications with reference to defective work:

"When the superintendent or engineer has any reason to believe that any portion of the work has not been properly done, and in accordance with the specifications, he may cut into or tear down such portion of the work and the contractor shall pay all costs of removing and restoring the same if it be found improperly done, but if such work has been done according to contract, then the city shall pay all such costs."

The petition alleged "that the city engineer of the plaintiff herein did, during the year 1932, receive information giving him reason to believe that the work, described in the contract and specifications herein referred to, had not been properly done and thereupon he was instructed by the plaintiff herein to purchase or procure a machine for the purpose of cutting into and coring the pavement herein described, and thereupon the plaintiff did purchase said machine and did employ men skilled in the operation thereof and have cut into and cored the pavement described herein, and have found the same to be 'improperly done' as by said contract provided, and that the reasonable cost and expense incurred by the plaintiff in such work, is $95.54, which is due and owing from the defendants herein, and no part whereof has ever been paid." The petition contained five counts and the amount of the damages prayed for, and the amount of the costs of the coring are set forth in each count separately, the figures given above being those contained in Count 1.

The contract was entered into on or about the 24th day of May, 1929, between the city and the defendant, Western Asphalt Paving Corporation, the Maryland Casualty Company executing the surety bond known as the "construction bond". The contract was assigned to Harrington & Jorgensen of Sioux City, who did the actual work of constructing the pavement. The effect of this assignment upon the liability of the bond company is one of the questions involved, and we will have more to say concerning this later.

There is no question under the record that the pavement was all constructed under the supervision of the city engineer, L. N. Hintgen, and one or two city inspectors who were present at all times when the work was being done. As each separate contract was completed, the engineer made a formal report to

the city council, stating in substance that the work had been completed and was ready for acceptance. These reports bore the approval of the commissioner of streets and public improvements. Acting on these various reports, the city council by resolution accepted the work and authorized payment therefor, and the special assessment certificates were delivered in due time to the proper parties. The work was settled for on the basis of pavement six inches thick, as called for by the specifications. There is no question raised with reference to any of the prior proceedings. All statutory provisions apparently were complied with, which would include notice to property owners fixing the time for hearing and for making objections to the assessment upon their property for the cost of the pavement, and there appears to have been no objection filed by anyone, and so the matter stood until a new dynasty ''who knew not Joseph'' arose and took charge of the city affairs, and we gather from the exhibits attached to a motion for change of venue, which are all set out in the abstract, that a new city engineer was employed and an investigation started. Experts from the office of the State Highway Commission at Ames, Iowa, were employed, and a systematic testing of the thickness of all the pavements constructed during the past several years prior thereto was undertaken, and this investigation extended over a period of some two years. The investigation disclosed the astounding fact that with the exception of a small per cent of the contracts, there had been an apparent consistent failure of the contractors to substantially comply with the specifications with regard to the thickness thereof, all of which, if substantiated by competent proof, would show that the city and abutting property owners had been defrauded to the extent of several hundred thousand dollars. It appears that numerous suits to recover back from the various contractors the amounts so paid were instituted, one of which is the case now before us. The suit is brought in the name of ''City of Sioux City, Iowa, a municipal corporation.''

I. The right of the city to maintain this suit is challenged by the defendants. Section 17 of the contract provides:

''The contractor shall simultaneously with the execution and delivery of this contract also execute and deliver to said city in duplicate originals, a bond on the form attached to the specifications for said improvement, which bond shall be in the

amount provided by said specifications and *which bond shall be for the benefit of said city, and all persons injured by the breach of any of the terms and provisions hereof.* Said bond shall be filed with the city clerk of said city and approved by the city council of said city, and shall be a part of this contract."

The construction bond referred to in the contract recites that the principal and surety named therein "are. held and firmly bound unto the city of Sioux City, Iowa, for its use and benefit and for the use and benefit of all persons, firms and corporations who shall perform any labor or furnish any material, including fuel, in the carrying out of the public contract hereinafter described in the penal sum of $————, * * * for the payment of which sum well and truly to be made at the office of the city treasurer of said city we do hereby jointly and severally bind ourselves," etc. The bond then states what the principal had·undertaken to do under the provisions of the contract, and then recites:

"Now, therefore, the condition of this obligation is such that if the principal *shall faithfully perform the above mentioned contract on their part* and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner (the said city) from all cost and damage which it may suffer by reason of the failure so to do, and shall fully reimburse and repay the owner (the said city) all outlay and expense which the owner (the said city) may incur in making good any such default, pay all persons who have contracts directly with the principal for subcontractors for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The specifications contained the following with reference to payment: "Payment will be made after completion of the contract and acceptance of the work by the city engineer and superintendent and the city council in special assessment certificates against the abutting or adjacent property or certificates on the roadway paving fund, or otherwise as by law and ordinance provided."

Section 1 of the contract provides: "In consideration of the *full compliance* on the part of said contractor with *all the provisions, stipulations and conditions herein set forth or contained in*

*the plans and specifications* for said improvements, and upon the completion and acceptance of said work, the city shall pay unto said contractor sixty days after such acceptance in special assessment certificates the amount then found to be due unto him as provided in the specifications for said work as hereinafter set forth, and the contractor agrees that precedent to the receipt of special assessment certificates for any section of work accepted by said city, that he will pay unto the city all incidental expenses incurred by it and assessed in such section, and he shall be entitled to receive all special assessment certificates issued for such accepted section, it being understood that all of such incidental expenses will be included in the assessment.''

As we understand the record as it is presented, all of the costs of the improvement were assessed against the abutting property owners, and the work was paid for by the issuance of special assessment certificates, and these were turned over to the assignee of the contractor by the said city. The record further shows that the city did not hold or own any of these special assessment certificates.

■■ Passing for the present the question of the sufficiency of the allegations and proof relating to fraud, and the further question as to the effect of the acceptance of the work by the city council, and assuming that the proof is sufficient to warrant the jury in finding that there was fraud inducing the acceptance of the work sufficient to overcome any estoppel by reason of the acceptance, let us consider upon what legal principle the city, named as obligee in the bond, may maintain this action to recover in its own right, damages for breach of the original contract, and recover back for itself the overpayment which it might have deducted at the time of acceptance and settlement under the specifications, which provided that where ''the average thickness is more than one-quarter inch and less than one inch below that specified, the price will be reduced by an amount double the actual deficiency.'' Had this shortage in the thickness of the pavement been discovered at the proper time and the settlement made accordingly, the city would not have received the benefit, but the same would have been passed on to the abutting property owners and the amount of the assessment certificates reduced accordingly. It therefore necessarily follows that the property owners have sustained the injury and would be en-

titled to the damages, if legal right exists to recoup the same from the contractor and its bondsmen. This is not a case brought on the maintenance bond where certain defects have been discovered and the contractor has been notified to repair the same, and failing to do so the city has proceeded to make the repairs and instituted suit upon the maintenance bond to recover the cost thereof. No one would question the right of the city to maintain such an action. This is a suit for breach of the original contract for failure to faithfully perform the same in accordance with the specifications, and against the bond company on the construction bond given to guarantee the faithful performance of the contract, and to recover back a sum of money which has been paid, not out of the city treasury, but by money obtained by levying a special assessment upon the abutting property owners, against whose property there subsists a valid lien for the amount of the tax or special assessment, and insofar as this record shows, the entire costs of the pavement, including the incidental expense of the city, are included in the special assessment certificates.

Wherein, then, has the city sustained any injury or damage? And what legal right has it to maintain this action in its own right? We can conceive of none. The only cases cited and relied upon by the appellee are the following: City of Ottumwa v. McCarthy Improvement Co., 175 Iowa 233, 150 N. W. 586, 154 N. W. 306, Ann. Cas. 1917E, 1077 (this was a suit on a maintenance bond); Hipwell v. National Surety Company, 130 Iowa 656, 105 N. W. 318 (this was a case brought by a materialman or subcontractor, and his right to recover was based on section 3467 of the Code of 1897, now Code section 10982 of the 1935 Code). Appellee also cites Schumacher v. City of Clear Lake, 214 Iowa 34, 38, 239 N. W. 71, 73, for the proposition that "the city acts through its proper administrative and legislative body, the council. The council in so acting acts as the properly constituted legislative body of the city, not as the mere agent of the property owners." We are unable to see how this helps the appellee.

Appellee also cites the case of Stockholders Investment Company v. Town of Brooklyn, 216 Iowa 693, 246 N. W. 826. This was a suit brought against the town by the holder of special assessment certificates upon the theory that the town made an assessment against abutting property in excess of 25% of the

value of said properties, and claiming that for this reason the town was liable for the deficiency after exhausting the property at tax sale. The defense was the statute of limitations. It was appellant's contention that in making this assessment the town became a trustee of the certificate holder, charged with the duty of properly levying, collecting and distributing the special assessment, and that the statute of limitations does not apply as between cestui que trust and the trustee, until there has been a violation or repudiation of the trust. Judge Anderson in writing the opinion held that under the circumstances in that case, the town did not become a trustee for the certificate holder. We cannot see wherein this principle is applicable to the situation with which the court is confronted in the instant case. Appellee asserts that the city owns the fee title to the streets and all the improvements in its corporate capacity, and cites the cases of Clare v. Wogan, 204 Iowa 1021, 216 N. W. 739, and Walker v. Des Moines, 161 Iowa 215, 142 N. W. 51. No one questions this principle, but appellee fails to make application of the principle. These are the only cases cited by counsel for appellee in support of the right of the city to maintain this suit, and it will be seen that none of them furnish any authority whatever.

Our statute (Code section 10967, Code 1935) provides that every action must be prosecuted in the name of the real party in interest. Manifestly, the city is not the real party in interest, with the exception of the item of costs or damage on account of the expense of making the tests. As to this the city is the real party in interest and entitled to maintain the action to recover the same.

II. While not presented by appellee in its argument, there is a legal basis to sustain the right of the city to bring this action, not in its own right, but in its own name. Section 10968 of the Code provides that "a party with whom or in whose name a contract is made for the benefit of another * * * may sue in his own name, without joining with him the party for whose benefit the action is prosecuted." This provision of the statute in substance has been the law in this state since the Revision of 1860, and has been applied by the courts in many instances involving situations analogous to the one with which we are here confronted, and this court has, quite uniformly, liberally construed this provision of the statute in the interests of justice, and in accordance with the underlying principle and spirit and pur-

pose for which it was enacted. In the case of Cassidy v. Woodward, 77 Iowa 354, at page 357, 42 N. W. 319, 320, the court said:

"It has uniformly been held by this court that under this provision of the Code [section 2544 of the Code of 1873, now section 10968 of the 1935 Code] the party holding the legal title to a cause of action, though he be a mere agent or trustee, with no beneficial interest therein, may sue thereon in his own name. Cottle v. Cole, 20 Iowa 481; Rice v. Savery, 22 Iowa 470; Pearson v. Cummings, 28 Iowa 344; Knadler v. Sharp, 36 Iowa 232; Vimont v. Railway Co., 64 Iowa 513, 514, 17 N. W. 31, 21 N. W. 9."

This quotation was quoted with approval in our recent case of Brauch v. Freking, 219 Iowa 556, at page 567, 258 N. W. 892. This is sustained on the theory that he who makes a contract may enforce it so long as he retains the legal title to the cause of action based thereon.

In the instant case, the contract is with the city. The obligee named in the bond, and who is therein designated as the "owner", is the city. It is alleged that the contract has been breached and not substantially performed. The bond was given to secure the faithful performance of the contract. This gives rise to a cause of action against the contractor and the bondsmen to recover the damage caused by the breach of the contract. The bond is a statutory bond, which is required to be given for the faithful performance of the contract. Under the facts disclosed by this record, any damage recovered must be concededly for the benefit of the abutting property owners who have paid or will be compelled to pay the special assessment certificates. We think it must also be conceded that the city has a right to recover under the contract the expense of coring where the paving proves to be sufficiently deficient in thickness to bring the case within the provisions of the specifications covering this point. We have recognized in this state the principle that in special assessment proceedings of the character of those involved in this case, the city acts in a representative capacity as agent, or quasi-trustee. It is true that it acts under authority of law and acts without the consent of the property owners, and in that sense it acts in its own right. But in the sense that it is duty bound to follow the statutory provisions made to protect the property owner as

well as the contractor, and in faithfully applying the provisions of the statute in requiring the execution of the construction bond, as well as the maintenance bond, and in levying and assessing the tax against the abutting property owners, it acts in a representative capacity for the property owners, and is duty bound to see that there is no unlawful overreaching or advantage obtained where the interests of the abutting property owners are involved. The contract expressly provides that the "bond shall be for the benefit of said city, and all persons injured by the breach of any of the terms and provisions thereof."

In the case of Atkinson v. City, 177 Iowa 659, at page 677, 158 N. W. 473, 479, we find this language:

"The city council, in providing improvements of this kind, acts as an agent of the taxpayer and abutting owners, but without consulting them; hence the necessity of the rule that the statute empowering them must be strictly construed." And again in the same case: "The city is the agent for the property owners. The property owners have but little, if anything, to say during the progress of the work, and many times do not have the time or inclination to examine the work carefully as it progresses. Some of the work is not discoverable without close observation. As a matter of common honesty, such contracts ought to be strictly complied with and performed, and the city authorities should see to it that it is so." To the same effect see Cardell v. City of Perry, 201 Iowa 628, 207 N. W. 775.

The court must assume that the city officials will perform their legal duties and account for this money to the abutting property owners for any amount recovered in which they have the beneficial interest, after deducting the cost which the city is put to in recovering the same. It ought to be said that proper practice in pleading to avoid any controversy over a matter of this kind, calls for an allegation in the petition to the effect that the action is brought on behalf of the city and on behalf of the parties beneficially interested, but we are not prepared to hold that the failure to incorporate such allegation in the petition in this case is fatal to the right of the plaintiff to bring the action in its own name. McKee v. Needles, 123 Iowa 195, 98 N. W. 618. See also City of Bristol v. Bostwick, 139 Tenn. 304, 202 S. W. 61; People v. Dodge, 11 Colo. App. 177, 52 Pac. 637. The contract, bond and specifications were part of the petition and

plainly indicate the true relationship which the city as a party to the contract and as obligee in the bond sustained to all interested parties.

■■■ III. By way of estoppel the defendants pleaded the acceptance by the city of the work done. That each of the several paving projects were accepted on reports submitted by the city engineer, by formal resolution duly passed and recorded, is fully established by the record, and under the law as laid down by our prior decisions, in the absence of fraud or mistake, this would estop the city, and be a complete bar to its recovery on the construction bond. The rule is stated in the case of City of Ottumwa v. McCarthy Improvement Company, 175 Iowa 233, 243, 150 N. W. 586, 589, 154 N. W. 306, Ann. Cas. 1917E, 1077, in the following language: ''This was done, and the improvements accepted by the city council. This was in compliance with the conditions of the first bond, and thereafter, the city, in the absence of fraud, might not, in an action thereon, question performance in conformity with the plans and specifications. Such is the purport of the authorities cited by the appellant, and too numerous for citation. Such approval by its officers is held, in a suit on a bond like the first, in the absence of fraud, to estop the city from asserting otherwise.'' The bond here referred to in the citation is the construction bond.

It therefore follows that fraud must be alleged and proven in order to overcome the estoppel. This may consist of fraud inducing the acceptance, or it might inhere in the acceptance where the officers of the city colluded with the contractor, or it may consist of what is termed ''legal fraud'' due to acceptance of work which does not comply substantially with the specifications, and which the council would have no legal authority to accept. It is contended by the appellants that fraud is neither alleged nor proven, and therefore the estoppel is a complete bar to recovery. We are inclined to disagree with the appellants. While the allegations with reference to this matter might well have been more definitely stated, and the error of pleading conclusions rather than facts avoided, we think there are sufficient allegations in the pleadings, when we consider the character of the fraud practiced, to warrant the court in submitting the matter to the jury, and that there was evidence sufficient to carry this question to the jury. Fraud of the character here involved must be largely shown by circumstances and legitimate

inferences to be drawn from conditions and circumstances. Fraud is the product usually of deceit, and may consist of overt acts or concealment. The wrong which is the basis of the plaintiff's right to recover, consists in cheating and defrauding the city by the failure to construct the pavement of the required thickness.

There is little dispute in the evidence with reference to the matter of the thickness of the pavement at the time it was constructed, as disclosed by the tests that were made. It is true these tests were made some four or four and one-half years after the paving was originally constructed. However, the great weight of the evidence is to the effect that there was little wear disclosed by the samples that were taken in making the tests. In not a single instance did the tests disclose the paving up to the specifications, and the average thickness shown by the tests was short more than one inch. This is alleged and fully proven. This condition could not be the result of accident or inadvertence. It must have been done knowingly and purposely, and therefore fraudulently. Another undisputed fact appears in the record, that all this work was done under the very eyes of the city engineer and the inspectors representing the city. Neither the engineer nor either of the inspectors was placed on the witness stand by either of the parties to this suit. It is likewise undisputed that at the time the city council acted upon the report of the engineer and accepted the pavement, they were without knowledge of the fact of the deficiency in thickness of the pavement. Several of the councilmen testified that they had no knowledge of it, and would not have approved or accepted the pavement had they known of this alleged fraud.

When boiled down and given fair interpretation, we think it is alleged that there was a failure on the part of the contractor to substantially comply with the contract in the matter of the thickness of the pavement, that this was known by the contractor or its agents in charge of the work, and this matter was concealed from the city council by the contractor; and it is further alleged that the city engineer negligently and by colluding with the contractor, aided and abetted in the perpetration of this fraud upon the city, and in obtaining the acceptance of this work, and that the contractor, well knowing that the city had no knowledge of the fact that the pavement was not of the required thickness, was duty bound to speak, so that settlement would be

made according to the actual thickness as the specifications provided, and by concealing this fact from the city council, was guilty of actual fraud.

In the case of Hernig v. Harris et al., 117 N. J. Eq. 146, 175 A. 169, 172, we find the following:

"Pomeroy, Par. 901, says: 'If either party to a transaction conceals some fact which is material, which is within his own knowledge, and which it is his duty to disclose, he is guilty of actual fraud.' "

"Constructive fraud, however, sometimes called 'legal fraud', is, nevertheless, fraud, although it rests more upon presumption and less upon furtive intent, than moral fraud." Cowee v. Cornell, 75 N. Y. 91, 31 Am. Rep. 428, Tobin et al. v. Barnett (Whitehurst v. Barnett), 161 Md. 444, 157 A. 737, 739.

Appellants, while practically admitting the failure of the contractor to comply substantially with the contract, in substance aver that they were under no obligation to speak, that the city engineer represented the city, and the inspectors were present and had an opportunity to measure the pavement, and that the engineer's acceptance of the pavement was final. There is no evidence that the engineer ever measured the pavement. It is not a matter of error of judgment on the part of the engineer in accepting the work. We quote from the case of Van Buren County v. Surety Company, 137 Iowa 490, at page 506, 115 N. W. 24, 31, 126 Am. St. Rep. 290, language very pertinent at this point:

"It would be a travesty on justice for us to hold that the surety for the performance of a contract is released from his obligation because his principal corrupted the agent of the obligee, and thereby induced the latter to act upon the theory that the work had been faithfully done." See also Steel Co. v. Van Buren County, 126 Iowa 606, 102 N. W. 536.

The Missouri court, in the case of Antonopoulos v. Chouteau Trust Co., 337 Mo. 252, 84 S. W. (2d) 1059, defines fraud as follows: " 'Fraud' is a willful, malevolent act, directed to perpetrating a wrong to the rights of another." And the Oklahoma court in the case of Operators Royalty & Producing Co. v. Greene, 173 Okl. 388, 49 P. (2d) 499, defines fraud as embracing "all multifarious means resorted to by one individual to get

advantage over another by false suggestions or suppression of truth, including all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.''

In looking for proof of fraud, the court is not confined to ''wide open spaces'', nor to detailed proof of fixed and definite overt acts or conduct. No excuse or justification is offered or suggested by the defendants, other than that of wear and tear by compression and abrasion for this shrinkage in thickness. Numerous witnesses with scientific training and experience amply qualifying them to speak authoritatively, testified that there was little indication of wear, and common sense and common knowledge lend much corroboration to their testimony in this regard. It is bordering upon the absurd to contend that a concrete pavement six inches thick, composed of a mixture such as was used in this pavement, would, in this day and age of vehicles equipped with pneumatic tires, be uniformly worn down by abrasion or compression in the period of four or four and one-half years, from a thickness of six inches, to an average thickness of 4.66 inches.

Under this state of facts, a jury would be warranted in finding that those in charge of the construction, as well as the engineer and inspectors placed there by the city to guard its interests, knew that the pavement was not of the required thickness at the time it was constructed. Possessed of this knowledge and concealing the same from the city council, an unwarranted advantage or benefit was gained by the contractor, which under the law the officers of the city would not be permitted to confer upon the contractor, and the contractor would not be legally entitled to receive. We can see no escape from the conclusion that there was conscious, flagrant violation of the contract, not only on the part of the contractor or its agents in charge of the work, but that this must have also been known and colluded in by the city engineer and inspectors. Under such circumstances, acceptance of the work would not be binding upon the city. This rule has been many times announced in cases brought on the part of property owners. McCain v. City of Des Moines, 128 Iowa 331, 103 N. W. 979; In re Appeal of Apple, 161 Iowa 314, 322, 142 N. W. 1021; Atkinson v. City of Webster City, 177 Iowa 659, 679, 158 N. W. 473; Wingert v. City of Tipton, 134 Iowa 97, 111, 108 N. W. 1035, 111 N. W. 432; Snouffer & Ford v. City of Tipton, 150 Iowa 73, 77, 129 N. W. 345, Ann. Cas. 1912D, 414;

Fisher v. L. E. Whitham & Co., 120 Tex. 516, 39 S. W. (2d) 869, 79 A. L. R. 1095, extended annotation at page 1107; City of Charles City v. Rasmussen, 210 Iowa 841, 232 N. W. 137, 72 A. L. R. 638; Cardell v. City of Perry, 201 Iowa 628, 634, 207 N. W. 775; Modern Steel Structural Co. v. Van Buren County, 126 Iowa 606, 102 N. W. 536; City of Ottumwa v. McCarthy Improvement Co., 175 Iowa 233, 150 N. W. 586, 154 N. W. 306, Ann. Cas. 1917E, 1077; Carthan v. Lang, 69 Iowa 384, 28 N. W. 650; Bond v. Newark, 19 N. J. Eq. 376, 383; Schumm v. Seymour, 24 N. J. Eq. 143, 150; Ryan v. Bay City, 160 Mich. 559, 125 N. W. 398; Eiermann v. City of Milwaukee, 142 Wis. 606, 126 N. W. 53, 27 L. R. A. (N. S.) 1085; Blain v. City of Delphi, 195 Ind. 463, 145 N. E. 764.

Silence of the contractor, coupled with the overt acts of these officials in approving the completion of the work, knowing at the time as they all must have known, that the report was false and untrue, and that there had not been a substantial compliance with the contract and specifications, and which knowledge was not possessed by the city council, furnishes fraud in abundance to overcome the estoppel. Appellants in argument admit that the cores showed only an average thickness of but 4.87 inches. This, coupled with the testimony of the expert witnesses that the cores taken in making the tests showed little wear, was, we think, in effect an admission of such deficiency in the thickness of the paving as to constitute actual fraud on the part of the contractor.

 Appellants also assert the city should be estopped because of use of the pavement for four and a half years without complaint. This is answered by the fact that the fraud was hidden from view. Unless someone involved in its perpetration "squealed", there was no way of discovering the fraud, other than a special investigation by cutting into the pavement, as was done in this case.

 IV. In submitting the issues to the jury, the court failed to instruct on the effect of the acceptance by the city council of performance of the contract, and failed to instruct with reference to what would constitute fraud, sufficient to overcome the estoppel because of the acceptance, and in this the court committed error. Estoppel was one of the defenses pleaded, and this issue should have been fully covered by the instructions.

■■■ V. Appellants also complain of the failure of the court to instruct the jury to the effect that the defendants were entitled to an allowance of 20% in variation of thickness due to compression or abrasion, in addition to the one-fourth inch of tolerance to which they are admittedly entitled, to cover variations in thickness at the time the work was completed. They base this claim on the following language found under the heading "Guaranty and Maintenance" clause of the specifications:

"3. *Repairs* shall be made whenever settlements or irregularities or disintegration occur in either *the base* or the *wearing surface* causing a variation in the surface of three-eighths (⅜) of an inch or over, measured within the length of a four-foot straightedge, or where cracks one-fourth (¼) inch or more in width appear, or cracks of any kind showing disintegration. The *wearing surface* shall not have lost either by compression or abrasion, or both, to exceed twenty (20) per cent of the original thickness of the *wearing surface* required by the specifications. The *wearing surface* shall be removed and replaced with a new *wearing surface* of the required character and material if during or at the end of the said guaranty period the condition of the pavement is not in accordance with the provisions of this guaranty."

The contract and specifications prepared by the city cover three distinct kinds of paving, CONCRETE, VITRIFIED BRICK and ASPHALT. The trial court held that this provision applied only to repairs, and would be applicable only to a suit brought on the maintenance bond. We think the trial court was clearly in the right in so holding. Furthermore, we are of the opinion that this ("20 per cent") specification does not apply to a concrete pavement. It will be noticed that it has reference to "wearing surface." It states: "The *wearing surface* shall not have lost either by compression or abrasion or both, to exceed 20% of the original thickness of the *wearing surface* required by the specifications. The *wearing surface* shall be removed and replaced with a new *wearing surface* of the required character and material if during or at the end of the said guaranty period the condition of the pavement is not in accordance with the provisions of this guaranty." Under the specifications for "concrete pavement" we find no reference to *wearing surface*. The specifications concerning *wearing surface* are found under the general

heading of "sheet asphalt pavement." This, like brick pavement, is laid upon a concrete *base* and under the heading "binder and wearing surface" the specifications for laying sheet asphalt pavement provide: "Upon the *concrete foundation*, specified heretofore, shall be laid the pavement proper. This shall consist of a binder course one (1) inch in thickness and a *wearing surface* of one and one-half (1½)' inches in thickness." Then follow detailed specifications for the wearing surface, mixture and the manner of applying it.

Manifestly, appellants' counsel cannot be serious in contending that the 20% clause, especially applicable to wearing surface, has anything to do with a solid concrete pavement. Counsel for appellants attempt to justify this fallacious argument and their right to claim the benefit of the 20% clause under "Guaranty and Maintenance" because of the testimony of one of plaintiff's witnesses who stated that the wearing surface of a concrete pavement would be the entire thickness of the pavement. The witness, of course, was correct in his statement, but nowhere in the specifications is there any intimation that the use of the term "wearing surface" has reference to the entire thickness of the pavement. Of course, in a broad, general sense, the wearing surface means that portion coming in direct contact with traffic. But that is not the sense in which the term is used in this 20% clause.

By implication, a tolerance of ¼ of an inch is allowable which is found in the following provision applicable to concrete pavement: "Before the pavement is accepted, the thickness may be tested by removing as many cores as the City Engineer and Commissioner of Streets and Public Improvements may determine. If the average thickness is more than one-quarter inch and less than one inch below that specified, the price will be reduced by an amount double the actual deficiency. If the average thickness is one inch or more below that specified, the pavement will be rejected. The reduction will be as thickness is to price per square yard." And this is the only provision for tolerance having reference to the matter of determining the thickness of the pavement as originally constructed. This does not mean that evidence bearing upon the fact of wear and tear by usage was not competent on the issue as to the original thickness of the pavement, where the measurements were taken, as they were in the instant case, more than four years after the pavement was

laid. Such evidence was, of course, competent to be considered by the jury in determining this issue, but the defendants were not entitled to the benefit of this 20% provision relating to the wearing surface of an entirely different kind of construction.

▮▮▮ VI. On behalf of the surety company it is urged by appellants that the assignment of the contract to do the work, to Harrington & Jorgensen, operated as a release of the surety on the bond of the contractor. The assignment is not before us. All that is included in the abstract of the record is the following endorsement appearing on the back of the assignment: "And the City of Sioux City, in consideration of the foregoing, does hereby recognize the right of Harrington & Jorgensen to payment and receive said improvement certificates and cash, *and does consent to said assignment* and to the delivery of said certificates or cash to said Harrington & Jorgensen, pursuant thereto, dated at Sioux City, Ia., this 5th day of June, 1929, City of Sioux City, Ia." Special attention is directed to the italicized portion. Appellants contend that, inasmuch as the original assignment which contained the endorsement of consent, which endorsement was signed by the city auditor, was introduced in evidence by the plaintiff, this was sufficient proof that the city legally consented to the assignment and thereby released the surety. The burden was on the defendants to establish by a preponderance of the evidence that the city council approved and consented to this assignment. Proof of consent by the city auditor alone is not sufficient. The authorities quite uniformly hold that an assignment of a contract of this kind is not valid without the consent of the other contracting party, in this case the city. This consent could only be given by the city council, acting in a way authorized by law. Johnson v. Vickers, 139 Wis. 145, 120 N. W. 837, 21 L. R. A. (N. S.) 359, 131 Am. St. Rep. 1046, and cases therein cited.

The city council at all times recognized Western Asphalt Paving Corporation as the contractor, and not Harrington & Jorgensen. The paving certificates were issued to the Western Asphalt Paving Corporation. The resolution of acceptance of the work by the city council and the report of the city engineer referred to the Western Asphalt Paving Corporation as the contractor, and it is not shown that in any of the proceedings of the city council Harrington & Jorgensen were recognized as the contracting party.

■■■ VII. Over proper objections, plaintiff's expert witness, Meyers, was permitted to answer questions calling for his opinion as to whether pavement of the thickness shown by the evidence was a substantial compliance with the specifications. This was the ultimate fact for the jury to determine, and should have been left to the jury under the instructions given by the court defining what constituted a substantial compliance. Justis v. Union Mutual Cas. Co., 215 Iowa 109, 244 N. W. 696. This was really not a matter for expert testimony. The failure of compliance involved related only to the thickness of the pavement. It was perfectly proper to allow the witness to testify to the relative tensile strength, life and quality of pavement of the thickness shown by the evidence, as compared to pavement of the thickness called for by the specifications. If it were a question as to quality or proportion of the mixture, such as was involved in the case of Wingert v. City of Tipton, 134 Iowa 97, 108 N. W. 1035, 111 N. W. 432, the matter would call for an expert opinion, and the question would be proper. But in this case, if the jury should find from the evidence that there was a variation in thickness at the time it was constructed, as claimed by the plaintiff, it would not require the aid of expert testimony to determine whether this constituted failure of substantial compliance. It is doubtful whether, under the facts as related by the witness, the answer was prejudicial, but we do not feel it is necessary to determine this question.

■■■ VIII. Complaint is also made because the court excluded evidence as to the quantity of material sold and delivered to the contractor, contending that this is one method of showing that the work was according to contract. In view of the fact that appellants made no effort to prove the quantity of material that actually went into the structure, the proffered testimony was immaterial.

IX. Error is also claimed because of the measure of damages applied. The court attempted to apply the measure fixed by the specifications themselves: "If the average thickness is more sight or omission to instruct on this point as to one of the counts of the petition. It is not likely that these matters will be overlooked on a retrial, and no extended comment thereon is called for. The measure of damages is found in the following words in the contract. Some confusion is apparent. Likewise, an overthan one-quarter inch and less than one inch below that speci-

fied, the price will be reduced by an amount double the actual deficiency. If the average thickness is one inch or more below that specified, the pavement will be rejected. The reduction will be as thickness is to price per square yard.'' There need be no misunderstanding of this language. Under this standard adopted by the contracting parties, if the deficiency in thickness is shown to be more than one inch, the city council has no other alternative but to reject it, in which case the plaintiff would be entitled to recover back the amount paid. If the deficiency in thickness is more than one-quarter inch, but not more than one inch, then the contract price will be reduced by an amount double the actual deficiency. In the event the average deficiency in thickness is one-quarter inch or less, no recovery may be had. This is the measure the court undertook to give, and we think it is the legal measure. No other is suggested by appellants. The same measure should be given as to all five counts of the petition, and the jury allowed to determine from the evidence the matter of the extent of the deficiency in thickness, and to apply whichever standard is applicable, unless there is no dispute or conflict in the evidence as to thickness as applied to any one or more of the five counts of the petition, in which case the court could make the application.

 Counsel for appellants argue that because this pavement was used for four and one-half years before the tests were made, this standard provided by the specifications is not applicable, for the reason that it only applies to the variation in thickness discovered ''before the work is accepted'' by the council; but where the acceptance is brought about through fraud, as in this case, this limitation does not apply. The law is well settled in this state that where a contractor has failed to substantially comply with the specifications, and is thereby barred from recovering the contract price agreed upon, he may not recover on *quantum meruit* from the city or the property owners, and this would be especially true where the contractor is guilty of fraud in the construction of the pavement. This matter was thoroughly thrashed out by this court in a series of cases involving pavement in the town of Tipton, Iowa. See Wingert v. City of Tipton, 134 Iowa 97, 108 N. W. 1035, 111 N. W. 432; Snouffer & Ford v. Grove, 139 Iowa 466, 116 N. W. 1056; Snouffer & Ford v. Tipton, 150 Iowa 73, 129 N. W. 345, 346, Ann. Cas. 1912D, 414. In this last case the court held that ''neither the city nor

the property owners can be forced to pay for a pavement which fails to comply substantially with the contract made for its construction.'' The standard for measuring the damages according to the specifications, which was adopted by the court, is therefore more favorable to appellants than would be the rule in the absence of such specifications, in which case rejection of the contract and recovery of the contract price would be permissible, as to all five counts of the petition.

X. Appellants insisted in the original petition in this case, and in argument after rehearing was granted, that they were entitled to a change of venue, or at least to have a different presiding judge. We think this matter was sufficiently covered by Justice Parsons in the original opinion, wherein he states: ''The court might very well have ordered a change of venue in this case. It seems to us, however, in this case it was a matter of judicial discretion. The court having exercised his discretion, it is not for us to interfere.'' We might add that the objection to the trial judge was not that he was biased, or prejudiced, but that he was a property owner and a taxpayer and financially interested. The interest referred to in section 10818 of the 1935 Code of Iowa, which disqualifies a trial judge, means some direct, pecuniary gain or property interest, and has no reference to the remote interest which he, along with every other citizen, property owner and taxpayer of the city, might have in the result of a judgment against the city. This was definitely settled by our recent case of Piuser v. Sioux City,. 220 Iowa 308, 262 N. W. 551, 100 A. L. R. 1298.

We have, at the risk of being tedious and verbose, attempted to cover every matter presented in appellants' brief and argument, and if there is any matter not touched upon, it is because we consider the same to be merely incidental to the questions discussed and determined, or without sufficient merit to warrant special consideration, or of such a nature as not likely to occur on a retrial of the case. For the reasons herein pointed out, the case must be and is reversed. (All italics ours.) Reversed.

RICHARDS, C. J., and PARSONS, DONEGAN, KINTZINGER, STIGER, and SAGER, JJ., concur.

ANDERSON, J., takes no part.