CITY OF AMES, Iowa, Appellant,

and

Conservative Mortgage Company, Intervenor, Appellant,

v.

SCHILL BUILDERS, INC. and State Surety Company, Appellees.

SCHILL BUILDERS, INC., Appellee,

v.

Duane R. HANSON, Mary Hanson, and Village Development Corporation, Appellees.

Duane R. HANSON, Mary Hanson, and Village Development Corporation, Appellees,

v.

CONSERVATIVE MORTGAGE COMPANY, Appellant.

CONSERVATIVE MORTGAGE COMPANY, Appellant,

v.

STATE SURETY COMPANY, Appellee.

STATE SURETY COMPANY, Appellee,

v.

Duane R. HANSON and Frank A. Schill, Appellees.

No. 63459.

Supreme Court of Iowa.

May 21, 1980.

John R. Klaus, Ames City Atty., for appellant City of Ames.

Donald A. Wine of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant Conservative Mortgage.

L. W. Courter and Kirke C. Quinn of Doran, Doran, Courter & Quinn, Boone, for appellee Schill Builders.

David L. Phipps of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellee State Surety Company.

Louis R. Hockenberg of Wasker, Sullivan & Ward, Des Moines, for appellees Hansons and Village Development.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE, and McGIVERIN, JJ.

LeGRAND, Justice.

This appeal arises out of a controversy concerning the liability of State Surety Company under a surety bond issued to the City of Ames to guarantee the construction of streets, sidewalks, sewers, and other public improvements in connection with the development of a tract of land for residential use. The trial court found in favor of the Surety and we affirm.

This is the second time this case has been here on appeal. *See City of Ames v. Schill Builders, Inc.*, 274 N.W.2d 708 (Iowa 1979) where we held the City of Ames was a proper party to prosecute this action but where no decision was made concerning the merits of the controversy. We remanded for trial on the merits.

On remand, the parties submitted the case on the record previously made, declining the trial court's offer to permit additional testimony. We borrow the following statement of facts from our first opinion:

> In exchange for the City's approval of a plat of a tract of land, Schill & Hanson Builders, Inc. agreed in 1970 to construct sewers and other improvements within 12 months and posted a bond issued by State Surety Company as security. The agreement permitted the City to complete the improvements if Schill & Hanson failed

to do so. The bond bound Schill & Hanson as principal and State Surety as surety to the City for $83,600. It contained this condition:

> NOW, if the Principal shall in all respects fulfill his said obligation within two years according to the terms of his agreement and shall satisfy all claims and demands incurred for same and shall fully indemnify and save harmless the Obligee from all costs and damages which it may suffer by reason of failure to do so and shall fully reimburse and repay the Obligee all outlays and expenses which it may incur in making good any such default, then this obligation is to be void and of no effect; otherwise to remain in full force and effect.

Schill & Hanson planned to get financing from intervenor Conservative Mortgage Company. Soon after the platting Schill & Hanson conveyed the tract to Village Development Corporation, which Schill & Hanson had previously used to carry out similar projects. Conservative advanced funds on a mortgage on the tract. Shortly afterward Mr. Schill and Mr. Hanson parted ways; Mr. Hanson took Village Development and Mr. Schill took Schill & Hanson which he renamed Schill Builders.

Village Development commenced construction but did not complete the improvements. Eventually Conservative commenced foreclosure. Still later Conservative received a quitclaim deed of the property in lieu of foreclosure.

Conservative thus held the property with partially constructed improvements which Schill & Hanson several years earlier agreed to build completely within a year. In order to get the improvements completed, the City and Conservative worked out the following arrangement. The City undertook completion of the improvements. Conservative advanced funds to the City to do so. The City agreed to pursue its legal remedies to recover from Schill Builders, successor to Schill & Hanson, and from State Surety

on the bond, and to repay Conservative from the funds recovered. . . .
*Id.* at 709.

On remand, the trial court found against the City and Conservative on several grounds. We find it necessary to consider only the circumstances under which Conservative paid for the completion of the improvements upon which there had been a default. We believe this to be determinative of this appeal.

To set the stage for our discussion, we quote once more from our opinion on the first appeal, where we said:

> Conservative's role in these transactions [involving the failure of Schill & Hanson to perform its contract] raises the question of whether it became ultimately responsible to complete the improvements. Defendants do not point to any covenant whereby Conservative promised to make the improvements at its own expense for Schill & Hanson. We do not decide the question of whether Conservative became ultimately responsible for two reasons: the trial court did not find such a covenant, and the question takes us beyond the real party in interest issue and into the ultimate merits of the case. We leave the question open on remand. The bald facts that Conservative received the quitclaim deed in lieu of a foreclosure decree and advanced funds to the City to complete the improvements on the condition of repayment upon recovery do not themselves constitute an assumption by Conservative of Schill & Hanson's contract to make the improvements.

*City of Ames*, 274 N.W.2d at 712.

The City and Conservative rely strongly on this statement. However, we did not there consider—nor was it there an issue—the additional part Conservative played in developing and improving the addition.

The matter arises this way. Conservative took a quitclaim deed to the property from Village Development in lieu of foreclosing its mortgage. It thus became the owner of the real estate comprising Meadow Village Addition, Phase II. Desiring to make certain changes to enhance its profit potential,

Conservative vacated the plat of Meadow Village Addition, Phase II, and submitted a new plat to the city council. The new plat embraced the land which had formerly been Meadow Village Addition, Phase II, and additional real estate as well. The name of Meadow Village Addition, Phase II, was dropped in favor of new designations— Southdale I and Southdale II. More of the land was devoted to private housing, less was dedicated for public use. The city council approved the plats submitted by Conservative.

The evidence is without dispute that the council's approval required the completion of the public improvements which Schill & Hanson left undone. Conservative advanced the money and the City had the work done under the arrangement already referred to in the quotation from our opinion in the first appeal. Now the City seeks reimbursement from State Surety, not for itself, but for Conservative. It is conceded the City has suffered no loss, that it has its public improvements, and that any recovery will inure to the benefit of Conservative.

As part of its findings, the trial court held Conservative had impliedly agreed to complete the public improvements at its own expense. We hold the result does not depend on any agreement, express or implied, but rather on Conservative's obligation to complete the improvements as part of its commitment in replatting of the property.

We do not retreat from our statement in the first appeal concerning uncertainty about Conservative's "ultimate responsibility." There we said liability would not arise simply because of the "bald facts that Conservative received the quitclaim deed . . and advanced funds to the City to complete the improvements on condition of repayment" in the event of recovery from State Surety. *City of Ames*, 274 N.W.2d at 712.

However, we were not called upon there to consider Conservative's further part after it acquired title. Conservative became more than a mortgagee attempting to work its way out of a bad mortgage. It became a developer of the real estate. In this con-

nection it is interesting to note Conservative is wholly owned by Fullerton Lumber Company, which operates a wholesale lumber company, a finance company, several construction companies, and a land development company.

When the original plat was vacated and the new plat of Southdale I and Southdale II was accepted by the City, we hold Conservative became responsible to the City for the public improvements required of the developer.

The evidence is clear that Conservative could not have replatted the property without providing the public services and improvements which had been part of the original plat plans. We believe this completely changed Conservative's position.

It was no longer merely a mortgagee trying to work its way out of financial misfortune. It had become a land developer, which had taken over from a previous owner, altered plans, added some services, eliminated others, and had asked—and received—the City's approval of its new and expanded plans.

The conclusion is inescapable that Conservative thus became responsible for the construction of the public improvements here in dispute. Therefore, when Conservative advanced funds to pay for these improvements, it was paying for something it was obligated to do.

The City is out nothing in any event. It has its public improvements without cost. This is a controversy to decide whether Conservative or State Surety should pay the amount of the bond toward the cost of those improvements. The City does not seek to recover for itself; it wants to reimburse Conservative from the proceeds of the bond. Several difficulties arise. Conservative was not an intended beneficiary under the bond. The statute (§ 409.5, The Code) limits the protection of the bond to the municipality. *See Morro Palisades Company v. Hartford Accident & Indemnity Company*, 52 Cal.2d 397, 401, 340 P.2d 628, 631 (1959). Here the municipality needs no protection because it has received

everything it is entitled to. Neither can this case be brought within the terms of *Sioux City v. Western Asphalt Paving Corp.*, 223 Iowa 279, 290, 271 N.W. 624, 631–32 (1937), strongly relied on by the City and Conservative. As we view that case, it was intended to protect individual property owners who had suffered assessments for improvements another should have paid. Its purpose was not to permit a commercial developer of real estate to recover from a surety for discharging its own obligation. We have found no cases factually similar to this one. There are cases holding payment or performance by a third person will discharge a surety. *Gill v. Waterhouse*, 245 F. 75, 79–80 (9th Cir. 1917); *Lee v. Field*, 9 N.M. 435, ——, 54 P. 873, 874 (1898); A. Stearns, *The Law of Suretyship* § 6.52 (5th ed. 1958). However, these authorities do not deal with factual situations like the one now before us.

Conservative argues the default had already occurred before it became the owner of the land. They argue, too, the City could have compelled the surety to pay had it elected to do so. We assume this is true, without deciding it. Nevertheless it remains that Conservative made itself liable for those same improvements when it replatted the property.

■■ Where does this leave the City as far as a claim under the bond is concerned? We believe the trial court correctly held the City had no claim. Conservative has asserted no independent cause of action against Schill & Hanson. It bases its right to recovery solely on the City's claim under the bond together with the City's agreement to turn over any amount recovered to Conservative. Consequently Conservative, too, must fail.

Although there were several cross-claims brought into this case, all depend upon the City's ability to recover under the bond. We therefore need not discuss them.

The judgment is affirmed.

AFFIRMED.